UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF MISSISSIPPI

SOUTHERN DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

MAY 1 1 2026

ARTHUR JOHNSTON
BY_____ DEPUTY

YURI PETRINI and
JARROD LEWIS FUSCO,
    **Plaintiffs,**
v.

Civil Action No. 1:26-cv-00094-LG-BWR

KENNY GLAVAN, ANDREW "FOFO"
GILICH, JERRY CREEL, CHRISTOPHER DE
BACK, TARA RAMAGE, MOLLY
SCHROEDER, JONATHAN JOHNSON,
APRYL LEE READY, SCOTT H. LUSK,
ROBERT G. HARENSKI, MICHAEL
WHITEHEAD, CATHERINE McMAHAN,
STACY THACKER, ANTHONY CHASTAIN,
KERRY CAVANAUGH, SAMUEL POULOS,
and JOANNE POULOS, each in their individual
capacity; CITY OF BILOXI, MISSISSIPPI; and
HARRISON COUNTY, MISSISSIPPI,
    **Defendants.**

## FIRST AMENDED COMPLAINT AND JURY DEMAND

## PRELIMINARY STATEMENT

This case is about the freedom of the press, the prohibition on prior restraint, and the limits of municipal power when that power has been captured by the officials the press scrutinizes. Plaintiffs come for themselves, and for every Biloxi citizen who has watched what was done to them and wonders whether the same can be done to anyone who publishes, speaks, or asks questions of those in power. This is not a class action. It is two credentialed journalists targeted by a municipal campaign to silence them — first through civil process; then through a Biloxi Police Department intelligence bulletin sourced to opposing counsel; then through a criminal affidavit sworn by a public official who is herself a named federal civil-rights defendant under a protective order barring her contact with Plaintiff; then through a warrant signed by a judge with no jurisdiction over the Court that issued it; and then through the open coordination of a sitting Council President from the dais. Defendants ask this Court to bless what the First Amendment forbade through civil process by relabeling the vehicle as criminal — sanctioning

1

the arrest of Plaintiffs who voluntarily surrendered within an hour of a phone call, were never shown a charging document, were handcuffed four times, held nine hours, X-rayed, body-cavity searched, denied medication and counsel; a bond at twice the statutory maximum fine; and charging documents produced only days after release, which Plaintiffs have reason to believe were sanitized, supplemented, and modified to conceal the absence of jurisdiction. The sum is prior restraint, retaliation against the press, capture of the prosecutorial and judicial apparatus, and municipal overreach beyond any boundary American constitutional law has tolerated. The cause is not probable — it is suppressive on its face. Plaintiffs respectfully seek general damages, punitive damages against each individual-capacity Defendant, declaratory judgment that Defendants violated the First, Fourth, Sixth, Eighth, and Fourteenth Amendments, injunctive relief barring further retaliation, attorneys' fees under 42 U.S.C. § 1988 and 42 U.S.C. § 12205 reserved should Plaintiffs retain counsel, and all further relief just and proper. Plaintiffs demand trial by jury on all claims so triable.

---

## I. PARTIES

1. The Parties to this action are: (a) Plaintiff Yuri Petrini; (b) Plaintiff Jarrod Lewis Fusco; (c) Defendant Kenny Glavan, a member of the Biloxi City Council, sued individually; (d) Defendant Andrew "Fofo" Gilich, the Mayor of the City, sued individually; (e) Defendant Jerry Creel, the City's Building Official, sued individually; (f) Defendant Christopher De Back, the Chief of Police, sued individually; (g) Defendant Tara Ramage, a City employee, sued individually; (h) Defendant Officer Molly Schroeder, a City police officer, sued individually; (i) Defendant Officer Jonathan Johnson, a City police officer, sued individually; (j) Defendant Hon. Apryl Lee Ready, a Municipal Court Judge, sued individually; (k) Defendant Hon. Scott H. Lusk, a substitute Municipal Court Judge, sued individually; (l) Defendant Robert G. Harenski, a City prosecutor, sued individually; (m) Defendant Michael Whitehead, an attorney who acted in concert with state actors, sued individually; (n) Defendant Catherine McMahan, a City employee, sued individually; (o) Defendant Stacy Thacker, a City employee, sued individually; (p)

2

Defendant Anthony Chastain, a private individual who acted in concert with state actors, sued individually; **(q)** Defendant Kerry Cavanaugh, a private individual who acted in concert with state actors, sued individually; **(r)** Defendant Samuel Poulos, a private individual who acted in concert with state actors, sued individually; **(s)** Defendant Joanne Poulos, a private individual who acted in concert with state actors, sued individually; **(t)** Defendant City of Biloxi, a Mississippi municipal corporation suable under 42 U.S.C. § 1983; and **(u)** Defendant Harrison County, Mississippi, a Mississippi political subdivision suable under 42 U.S.C. § 1983.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4). Venue is proper under 28 U.S.C. § 1391(b). Supplemental jurisdiction over state-law claims lies under 28 U.S.C. § 1367.

## III. STATEMENT OF FACTS

### A. The October 1, 2025 Settlement

3. On October 1, 2025, following a Court-ordered conference held September 30, 2025 in Cause No. 1:25-cv-00254-LG-RPM, Harenski transmitted to Petrini a written settlement letter conditioning Harenski's assurances upon Petrini's dismissal of Harenski from that case without prejudice and Petrini's agreement not to name Harenski in any amended complaint.

4. The letter framed the assurances described in the following paragraphs as due-process protections applicable to any future criminal charges brought by the City of Biloxi against Petrini.

5. The letter contained Harenski's written assurance that, where a City Ordinance provides for an opportunity to cure prior to the filing of criminal charges, Petrini would be given notice of the alleged violation and an opportunity to cure prior to the filing of any charges against him.

6. The letter contained Harenski's written assurance that, prior to any warrant being issued against Petrini, a City Prosecutor would review and approve the Criminal Affidavit going forward to the Judge.

7. The letter contained Harenski's written assurance that, prior to any warrant being issued against Petrini, "Judge Ready (or, in her absence, another Municipal Court Judge)" would review the Criminal Affidavit to determine whether probable cause existed.

8. The letterhead of the October 1, 2025 letter identifies the Municipal Court Judges of the City of Biloxi as Stephen Simpson, James Steele, and Apryl Ready, and the City Prosecutors as Robert Harenski and Patrick Williams.

## B. The November 7, 2025 Surveillance and Email

9. Whitehead is a Mississippi-licensed attorney at Page Mannino Peresich & McDermott, PLLC, whose representation of City employees in related federal litigation is supervised by Peter Abide pursuant to Biloxi City Council Resolution No. 327-17.

10. In federal filings dated September 12, 2025, Whitehead represented to this Court that he represents only individual City employees in their personal capacities and does not represent the City of Biloxi as an entity.

11. On November 7, 2025, at approximately 11:59 a.m., Whitehead conducted surveillance of Petrini's property at 1606 Beach Boulevard, Biloxi, Mississippi, while Petrini was a pro se plaintiff in pending federal litigation against the City.

12. Whitehead conducted the surveillance as a passenger in a white GMC truck.

13. During the surveillance, Whitehead photographed the property and recorded video footage of it.

14. Plaintiffs are in possession of seven photographs depicting Whitehead during his conduct of the November 7, 2025 surveillance.

15. The surveillance occurred during a statutory stay then in effect under Biloxi Code § 23-2-4(S)(5).

4

16. The Biloxi Board of Building Adjustments and Appeals convened a hearing concerning Petrini's property approximately three hours after the surveillance.

17. Whitehead transmitted the photographs and video to City CAO Richard Weaver and other senior City officials.

18. Whitehead is not employed by the Biloxi Code Enforcement Department, the Biloxi Police Department, or the Biloxi Building Department.

**C. The March 31, 2026 Whitehead Visit and CIU Bulletin**

19. Prior to March 31, 2026, the parties engaged in settlement discussions concerning Petrini's pending federal civil-rights claims against the City of Biloxi in Cases 1:25-cv-00233 and 1:25-cv-00254.

20. During those discussions, the City defendants and their counsel demanded that Petrini release Hon. Apryl Lee Ready, Pettry, Donna Parker, and other persons from any claims, even though the City defendants and their counsel did not represent those persons.

21. Petrini objected to that demand.

22. During the settlement discussions on March 31, 2026, Whitehead represented to Petrini that the City defendants and their counsel would no longer demand that Petrini release persons whom they did not represent.

23. On April 8, 2026, defense counsel transmitted a revised settlement outline that continued to demand the release of persons whom the City defendants did not represent.

24. On March 31, 2026, Petrini completed a political painting on his property at 929 Division Street concerning both Defendant Mayor Gilich and the City's practice of conditioning the provision of municipal services upon waivers of civil-rights claims.

25. The painting was completed contemporaneously with the publication of an investigative article addressing that practice on Petrini's journalism platform peoplevsbiloxi.com.

26. Within approximately one hour of the painting's completion, Whitehead arrived at 929 Division Street uninvited and without prior scheduling.

27. Whitehead does not represent the City of Biloxi or Defendant Mayor Gilich.

28. Whitehead has no employment, contractual, or other authority in any code-enforcement, building-enforcement, or property-management capacity for the City.

29. The March 31, 2026 visit by Whitehead to 929 Division Street was not conducted pursuant to any City retention, instruction, contract, or written authorization.

30. The March 31, 2026 surveillance was the second instance of Whitehead conducting surveillance at a Petrini property during pending federal civil-rights litigation by Petrini against the City of Biloxi, the first being the November 7, 2025 surveillance described in paragraphs 11 through 17.

31. Whitehead demanded that Petrini remove the painting, and Petrini complied.

32. Whitehead thereafter initiated settlement discussions with Petrini, in person and by telephone, throughout the remainder of March 31, 2026.

33. As of March 31, 2026, Whitehead knew that Petrini was scheduled to depart the United States on April 2, 2026.

34. During the settlement discussions described in paragraph 32, Whitehead did not disclose to Petrini that Whitehead had communicated or intended to communicate with the Biloxi Police Department regarding Petrini.

35. On March 31, 2026, within hours of Whitehead's visit to 929 Division Street, the Biloxi Police Department's Criminal Intelligence Unit issued a bulletin identifying Petrini as a subject.

36. The bulletin identifies "third-party information" as its source.

37. On March 31, 2026, no person other than Whitehead had both contact with Petrini at 929 Division Street and contact with the Biloxi Police Department.

38. The bulletin contains Petrini's Social Security number, driver license number, a photograph of his driver license, a photograph extracted from his personal Facebook profile, his home address at 929 Division Street, and a physical description of his person.

6

39. The bulletin contains descriptions of four vehicles associated with Petrini, including vehicle identification numbers and license plate numbers, three of which vehicles are registered to Petrini's former spouse rather than to Petrini.

40. The bulletin's "Recommendation:" section states verbatim that Petrini "poses an undetermined threat to Mayor Gilich" but directs officers to "develop reasonable suspicion or probable cause to initiate enforcement contact" with Petrini; the bulletin also acknowledges on its face that there are "no criminal charges currently outstanding" against Petrini and that the Biloxi Police Department did not know "at the time of this brief" whether Petrini "has access to weapons."

41. The bulletin contains an internal recommendation that officers "do not stop or detain" Petrini.

42. The "do not stop or detain" recommendation in the bulletin appears alongside the "develop probable cause to initiate enforcement contact" instruction described in paragraph 41.

43. The bulletin was distributed department-wide through the Biloxi Police Department's internal electronic communications system.

**D. The March 3, 2026 Council Meeting**

44. The Biloxi City Council convened on March 3, 2026, and voted to suspend its Rules of Order at that meeting.

45. The complete video recording of the meeting is published on the City of Biloxi's official YouTube channel.

46. The March 3, 2026 Council meeting was reported on by the local broadcast outlet WLOX.

47. During citizen comments at the meeting, Plaintiff Petrini addressed the Council and stated that Defendant Mayor Gilich was associated with the Dixie Mafia.

48. Defendant Glavan, presiding over the meeting as Council President, threatened to have Petrini removed from the Council chamber based on the content of Petrini's statement.

7

49. Glavan stated on the record, "Will you remove him? Remove him."

50. Plaintiff Fusco then stood and stated on the record, "Point of order."

51. Fusco's "point of order" was a parliamentary objection to Glavan's threat to remove Petrini.

52. Defendant Mayor Gilich repeatedly stated on the record, "Take them out."

53. Fusco was physically removed from the Council chamber by Defendant De Back, the Chief of the Biloxi Police Department.

**E. The Military-Channel Retaliation Against Plaintiff Fusco**

54. Plaintiff Fusco is an active-duty Master Sergeant of the United States Air Force assigned to Keesler Air Force Base in Biloxi, Mississippi.

55. Plaintiff Fusco is the founder and publisher of the municipal-political journalism platform Biloxi Politics Uncensored; Plaintiff Petrini is the publisher of the municipal-political journalism platform peoplevsbiloxi.com; both platforms have substantial readership; each Plaintiff is registered with the City of Biloxi as a member of the media and receives Mayor's office briefings and public announcements on the same basis as other City-registered media; and each Plaintiff is a credentialed member of the Society of Professional Journalists.

56. In November 2024, Defendant Jerry Creel transmitted from his City of Biloxi email account to Commander Moseley of the 81st Training Wing at Keesler Air Force Base an email stating, in substance, "Mayor Gilich has asked me to check on Jarrod Lewis Fusco."

57. At all times relevant to the email described in the preceding paragraph, Plaintiff Fusco was a private citizen exercising First Amendment activity through Biloxi Politics Uncensored and was the subject of no pending City code-enforcement action.

58. On March 10, 2026, the City of Biloxi contacted Keesler Air Force Base concerning Plaintiff Fusco.

59. On March 24, 2026, Colonel Robinson of the 81st Training Wing transmitted to Master Sergeant Fusco a memorandum documenting the City of Biloxi's communications with

8

Keesler Air Force Base concerning Plaintiff Fusco.

60. No intervening event, communication, or document explains the elapsed time between the March 10, 2026 contact with Keesler and Colonel Robinson's March 24, 2026 memorandum to Fusco.

61. Defendant Glavan stated in the presence of Ward 4 Councilmember Hon. Jamie Creel, at a public establishment in Biloxi known as Tailgators, that Defendant Glavan had paid an individual to deliver harassing materials concerning Plaintiff Fusco to Keesler Air Force Base.

62. The communications described in paragraphs 56 through 61 occurred while Plaintiff Fusco was an active-duty member of the United States Armed Forces and a publisher of journalism critical of the City of Biloxi and its officials.

63. The communications described in paragraphs 56 through 61 were directed to military authorities possessing the power to impose adverse career consequences on active-duty service members.

## F. The June 30, 2025 Stop-Work Order

64. On June 30, 2025, City personnel served a stop-work order at Petrini's residence.

65. The stop-work order was issued twenty-four days after Petrini filed Case No. 1:25-cv-00178-LG-RPM, his first federal civil-rights action against the City of Biloxi.

66. The stop-work order was served with the assistance of two Biloxi Police Department officers.

67. At the November 7, 2025 Board of Building Adjustments and Appeals hearing, Defendant Jerry Creel testified under oath that he had "presented the information to the mayor and Pete Abide, who directed me to issue a stop work order" (Case No. 1:25-cv-00178, ECF No. 105-2 at 51).

9

**G. The April 28, 2026 Coordinated Day**

68. On April 28, 2026, Tara Ramage executed against Petrini a charging affidavit under Mississippi Code Annotated § 97-29-45(a) for "Obscene Electronic Communication."

69. On the same date, Tara Ramage also signed an Affidavit Withdrawal Penalties Form and a Sworn Statement of Facts in the same matter.

70. On the same date, Schroeder notarized the documents described in the preceding paragraphs.

71. The affidavit was forwarded for prosecution without prior review and approval by any City Prosecutor.

72. On the same date, a charging affidavit was also executed against Plaintiff Fusco under Mississippi Code Annotated § 97-29-45(a).

73. The charging affidavit against Plaintiff Fusco was based on Fusco's act of sharing on his journalism platform Biloxi Politics Uncensored an investigative article concerning Tara Ramage, designated "Part 02," published by Petrini on Petrini's journalism platform peoplevsbiloxi.com on March 6, 2026.

74. The local broadcast outlet WLOX reported on the March 6, 2026 article identified in the preceding paragraph as a March 6, 2026 news event.

75. Mississippi Code Annotated § 97-29-45 carries a maximum statutory monetary penalty of $500.

76. By approximately 5:00 p.m. on April 28, 2026, the Facebook page known as Operation Icebreaker / Biloxi Civility Watchdog (Page ID 61566199945432) had published a post titled "Captain's Log" announcing Tara Ramage's affidavit.

77. Beginning April 28, 2026 at approximately 1:14 p.m. and continuing through April 29, 2026, the operator of the Operation Icebreaker / Biloxi Civility Watchdog Facebook page sent direct chat messages to Petrini.

10

78. During those communications, the Operation Icebreaker operator conveyed Tara Ramage's personal demands to Petrini, including a demand that Petrini remove two specific articles authored by Petrini concerning Tara Ramage.

79. During those communications, the Operation Icebreaker operator quoted substantively from the affidavit Tara Ramage had executed earlier that day, and informed Petrini of the recusal status of Biloxi Municipal Court judges on the affidavit, before any public docket disclosure of those facts.

80. The Biloxi City Council convened in regular session on the same date.

81. At that meeting, Glavan placed a printed note at every Council member's seat.

82. The note identified Ward 2 Councilmember Anthony Marshall by name.

83. The note identified additional individuals as perceived allies of Plaintiffs.

84. The note originated at the office of Defendant Kerry Cavanaugh.

85. At the time the note was created, Defendants Samuel Poulos, Anthony Chastain, and Kerry Cavanaugh were present at Cavanaugh's office.

86. Defendant Chastain has admitted, in a text message, that he was the source of the note.

87. At the same April 28, 2026 Council meeting, Glavan publicly displayed his cellular telephone in open Council session.

88. The display was witnessed by Ward 4 Councilmember Hon. Jamie Creel.

89. Following the display, Councilmember Creel stated of Defendant Glavan, "He just showed me something was delivered to Keesler."

90. Within hours of the meeting, Operation Icebreaker began publishing harassment of Councilmember Marshall and Plaintiff Petrini.

91. The harassment included content of a racial character directed at Plaintiff Petrini, Plaintiff Fusco, and Ward 2 Councilmember Marshall, including published depictions of Plaintiffs Petrini and Fusco — neither of whom is Black — caricatured as Black men.

92. Within hours of the meeting, Operation Icebreaker also began publicizing on its Facebook page the delivery of materials to Keesler Air Force Base targeting Plaintiff Fusco.

93. On the same date, six City defendants filed answers to the original Complaint in this action (ECFs 7, 8, 9, 11, 12, 13).

**H. The April 29, 2026 Warrant**

94. On April 29, 2026, at approximately 8:14 a.m. Central Time, Petrini transmitted by electronic mail a written Notice and Demand to Defendant Hon. Apryl Lee Ready, Hon. James Steele of the Biloxi Municipal Court, the Clerk of the Biloxi Municipal Court, the Municipal Prosecutor for the City of Biloxi, Henry P. Ros and Zachary Cruthirds of Currie Johnson & Myers, P.A., Peter Abide, and Defendant Whitehead.

95. The April 29, 2026 Notice and Demand identified eleven independently dispositive defects in any forthcoming criminal process against Petrini, including the structural recusal of Defendant Ready and the total breach of the September 30, 2025 settlement described in paragraphs 3 through 8.

96. The April 29, 2026 Notice and Demand set forth thirteen time-bounded demands, each carrying a five- or ten-business-day response window.

97. No recipient of the April 29, 2026 Notice and Demand responded within the response windows specified.

98. On April 29, 2026, after the transmission of the Notice and Demand described in the preceding paragraphs, Defendant Lusk signed a warrant authorizing Petrini's arrest based on the April 28 affidavit.

99. As of April 29, 2026, Ready had recused from any matter involving Petrini.

100. The warrant bears the hand-written notation "Special Appointment."

101. Lusk was not appointed to the Biloxi Municipal Court through any statutory mechanism for judicial substitution under Mississippi law.

102. Senior Deputy Court Clerk Ashley Coker has confirmed, in person and by electronic mail, that the Biloxi Municipal Court has produced the complete docket in this matter and that, after internal review, no order, resolution, designation, or other documentation authorizing Lusk's service as a Biloxi Municipal Court Judge exists.

103. No City of Biloxi ordinance creates the position of pro tempore municipal judge.

104. Lusk is the appointed Municipal Court Judge for the City of D'Iberville, Mississippi.

105. The City of D'Iberville is a municipality distinct from the City of Biloxi.

106. The April 28, 2026 affidavit was sworn at the Biloxi Municipal Court on April 28, 2026, and the warrant signed by Lusk was signed on April 29, 2026, less than twenty-four hours later.

107. On January 27, 2026, the Biloxi Municipal Prosecutors filed a document captioned "IN RE: ALL MISDEMEANOR CRIMINAL CASES IN BILOXI MUNICIPAL COURT — MOTION TO SEAL AND RESTRICT USE OF DISCOVERY," docketed under Cause No. 260301169.

108. On January 28, 2026, Hon. Stephen B. Simpson signed a "STANDING ORDER TO SEAL AND RESTRICT USE OF DISCOVERY" docketed under Cause No. 260301169.

109. The charging affidavit underlying Cause No. 260301169 was not sworn until April 28, 2026 — three months after the documents described in paragraphs 107 and 108 were filed and signed bearing the same cause number.

110. Lusk's compensation as a substitute Biloxi Municipal Court judge is administered under the same regime that compensates the regular Biloxi Municipal Court judges.

111. That compensation regime is established by Biloxi City Council Resolution No. 635-19, which provides that judicial-officer compensation is "payable upon presentation of Invoice subject to approval by the Director of the Legal Department."

112. At all times relevant to the April 29, 2026 warrant, Peter C. Abide was the City of Biloxi's Director of the Legal Department.

13

113. At all times relevant to the April 29, 2026 warrant, Abide was a named individual-capacity defendant in *Petrini v. City of Biloxi*, No. 1:25-cv-00178; *Petrini v. City of Biloxi*, No. 1:25-cv-00233; and *Petrini v. City of Biloxi*, No. 1:25-cv-00254.

114. Lusk represents private criminal-defense clients before the Biloxi prosecutor's office.

115. Lusk's primary law practice is in Biloxi, Mississippi.

116. Lusk's law office is located on the same street as Biloxi City Hall.

117. Lusk regularly attends meetings of the Biloxi Businessmen's Club.

118. The meetings of the Biloxi Businessmen's Club regularly attended by Lusk are also regularly attended by Peter Abide, Defendant Glavan, and Defendant Mayor Gilich.

119. During the May 5, 2026 booking, Plaintiff Petrini observed that the charging document underlying Cause No. 260301169 bore a note stating that all sitting Biloxi Municipal Court judges had recused, and Plaintiff Petrini was additionally informed orally at booking that all sitting Biloxi Municipal Court judges had recused from the matter. Plaintiff Petrini has not been provided access to a copy of the charging document despite request. Every adjudicative act in Cause No. 260301169 has been performed by Defendant Lusk — a judge of the City of D'Iberville — notwithstanding the existence of three sitting Biloxi Municipal Court judges, including Hon. Stephen B. Simpson and Hon. James Steele, neither of whom has had any prior controversy, litigation, or other professional contact with Plaintiff Petrini.

120. On May 10, 2026, Defendant Robert G. Harenski transmitted to Plaintiff Petrini, by electronic mail, a written statement that Defendant Harenski had recused himself "from all cases involving" Plaintiff Petrini. The written statement is a party admission. It establishes that the prosecutorial-review assurance contained in Defendant Harenski's October 1, 2025 settlement letter — that City Prosecutor review and approval would occur before any affidavit was forwarded for prosecution against Plaintiff Petrini — could not have been honored as to any conduct occurring after Defendant Harenski's recusal. Defendant Harenski's recusal compounds the City of Biloxi's pattern of avoiding administrative resolution of Plaintiff Petrini's disputes — a pattern documented in the City's breach of the October 1, 2025 settlement assurances, the

non-response to Plaintiff Petrini's April 29, 2026 Notice and Demand, the recusal of all three sitting Biloxi Municipal Court judges, the manufactured zoning proceeding initiated by correspondence rather than by formal procedure, and the May 10, 2026 refusal to meet — and of channeling Plaintiff Petrini exclusively into adversarial litigation he did not seek.

## l. The Operation Icebreaker Enterprise

121. The Facebook page identified herein as the Operation Icebreaker page operates under Facebook Page ID 61566199945432.

122. The page has, at material times, operated under two published names: "Operation Icebreaker" and "Biloxi Civility Watchdog."

123. Defendant Chastain, on information and belief, is an operator of the Operation Icebreaker page.

124. Beginning on or about April 26, 2026, the Operation Icebreaker page published a series of posts captioned with a thirty-one-hour countdown to a publicly announced operation against Plaintiffs.

125. By approximately 5:00 p.m. on April 28, 2026, the Operation Icebreaker page had published a post titled "Captain's Log" announcing the existence of charging affidavits against Plaintiffs.

126. The Operation Icebreaker page has published statements asserting that Petrini is unlawfully present in the United States.

127. The Operation Icebreaker page has published statements asserting that Petrini is in the United States on an H-1B visa.

128. Petrini is a Lawful Permanent Resident of the United States.

129. The Operation Icebreaker page has published statements asserting the existence of active arrest warrants for Plaintiffs prior to any public docket disclosure of such warrants.

130. On May 3, 2026, at approximately 1:06 a.m., the Operation Icebreaker page published a post that tagged Keesler Air Force Base and depicted Plaintiff Fusco in caricature.

15

131. On or about May 3, 2026, the operators of the Operation Icebreaker page placed a paid Facebook advertisement, identified in Meta's Ad Library by Identifier 1670255857345451, captioned "BUSTED."

132. The "BUSTED" paid advertisement described in the preceding paragraph contained content of a racial character.

133. On April 26, 2026, Plaintiff Fusco's journalism platform Biloxi Politics Uncensored published a counter-post identifying the first persons to publicly engage with the Operation Icebreaker page, including Defendants Glavan, Samuel Poulos, and Kerry Cavanaugh.

134. The April 28-29, 2026 chat communications between the Operation Icebreaker operator and Petrini described in paragraphs 77 through 79 occurred through Facebook Messenger from a personal account (Facebook user ID 10241625019593361).

135. During those communications, the Operation Icebreaker operator quoted Tara Ramage's real-time statement of monitoring of Petrini's journalism platform: "I CAN STILL SEE MY PAGE."

136. During those communications, the Operation Icebreaker operator stated that he was acting on behalf of, and providing guidance to, Tara Ramage.

137. Beginning May 3, 2026 and continuing through May 4, 2026, the Operation Icebreaker operator sent further direct chat messages to Petrini through Facebook Messenger from the Operation Icebreaker / Biloxi Civility Watchdog Page identity (Facebook user ID 10241694449089055).

138. During those communications, the Operation Icebreaker operator named four protected parties — Tara Ramage, Toni, Christy, and Kerry — in nine separate messages across approximately fourteen hours.

139. During those communications, the Operation Icebreaker operator stated, "my interests are only those four."

140. During those communications, the Operation Icebreaker operator stated, "we decided to step away and shutter the page in 12 hours, just want Tara Kerry Christy and Toni out."

141. During those communications, the Operation Icebreaker operator demanded that Petrini remove specific journalism authored by Petrini and published on Petrini's journalism platform peoplevsbiloxi.com.

142. During those communications, the Operation Icebreaker operator conditioned the cessation of further publication concerning Petrini on the Operation Icebreaker page upon Petrini's compliance with the demand described in the preceding paragraph.

143. During those communications, the Operation Icebreaker operator stated, "First, as far as I know they really do have active warrants, I've heard that firsthand from the person who filed the charges the judge signed and has been told by bpd they are affecting an arrest."

144. During those communications, the Operation Icebreaker operator offered to disclose his true identity to Petrini in exchange for Petrini's compliance with the demands described in the preceding paragraphs.

145. During those communications, the Operation Icebreaker operator volunteered with respect to Defendant Stacy Thacker, "I promise Thacker and that office have nothing to do with that."

146. Subsequent to the chat communications described in the preceding paragraphs, both the "Operation Icebreaker" Facebook page and the "Biloxi Civility Watchdog" Facebook page were deleted.

147. On or about April 23, 2026, Defendant Samuel Poulos published on his personal Facebook page a fabricated image purporting to depict the booking of Plaintiff Fusco.

**J. The May 5, 2026 Arrest**

148. On May 5, 2026, Lusk issued a gag order in *City of Biloxi v. Petrini*, Cause No. 260301169.

149. On May 5, 2026, at approximately 10:00 a.m., Plaintiffs Petrini and Fusco were notified by telephone of the existence of the April 29, 2026 warrant. Prior to any pursuit, detain-on-sight directive, or apprehension operation, and within approximately one hour of that

telephone notification, Plaintiffs voluntarily surrendered themselves to law enforcement at a previously arranged location.

150. On the same date, Defendant Officer Jonathan Johnson placed Petrini under arrest pursuant to the April 29 Warrant.

151. On the same date, Plaintiff Fusco was also placed under arrest by officers of the Biloxi Police Department.

152. Prior to placing Petrini under arrest, Johnson permitted Petrini to make multiple unaccompanied trips to Petrini's vehicle for the purpose of depositing personal items.

153. Petrini complied with each of Johnson's instructions before, during, and after the arrest.

154. During the arrest, each Plaintiff was placed in handcuffs.

155. During the arrest, Johnson placed Petrini in handcuffs on at least four separate occasions.

156. On one or more of those occasions, Johnson restrained Petrini's hands behind Petrini's back.

157. On one or more of those occasions, Johnson placed restraints around Petrini's feet.

158. Before and during the arrest, Petrini informed Johnson that Petrini suffered from pre-existing shoulder injuries.

159. Petrini is a qualified individual with a disability within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.

160. Petrini informed Johnson before and during the arrest of Petrini's status as a qualified individual with a disability under the Americans with Disabilities Act.

161. At the Biloxi Police Department prior to transport to the Harrison County Adult Detention Center, each Plaintiff was searched by pat-down by Biloxi Police Department personnel.

162. The pat-down searches described in the preceding paragraph disclosed no weapons, no contraband, and no other items requiring further inspection.

18

**K. The Harrison County Adult Detention Center Custody**

163. Following the arrest, Petrini and Plaintiff Fusco were transported to the Harrison County Adult Detention Center.

164. During the transport described in the preceding paragraph, each Plaintiff was handcuffed and was additionally restrained by a vehicle seatbelt placed over the handcuffs. The seatbelt-over-handcuffs configuration caused pain and physical injury to Plaintiff Fusco's wrists.

165. Upon arrival at the Harrison County Adult Detention Center, Harrison County personnel subjected each Plaintiff to an ionizing-radiation X-ray examination without obtaining either Plaintiff's consent, without explanation by medical staff, without probable cause to believe either Plaintiff was concealing contraband, and without exigent circumstances.

166. Each Plaintiff was processed through the Detention Center's booking procedures on more than one occasion during the custody period.

167. Each Plaintiff was required to change into a Harrison County jail uniform.

168. Each Plaintiff was subjected to a visual body-cavity search requiring the Plaintiff to squat while unclothed.

169. Each Plaintiff was held in custody at the Harrison County Adult Detention Center for approximately nine hours.

170. At no point during the May 5, 2026 custody period was either Plaintiff admitted to the general population of the Harrison County Adult Detention Center; both Plaintiffs were held within booking, processing, and pre-release areas pending posting of bond.

171. Before requesting medication, Petrini disclosed his ADA-qualified status to booking personnel at the Biloxi Police Department prior to transport to the Harrison County Adult Detention Center, and to Harrison County personnel on multiple occasions during the custody period; Petrini then requested medication required to manage the disability identified in paragraphs 156 and 157.

172. Harrison County personnel denied Petrini's medication request.

173. Throughout the custody period, neither Plaintiff was provided information regarding the basis for or anticipated duration of their detention.

174. Fusco was not permitted to place any telephone call during the custody period.

175. Petrini was not permitted to place a telephone call until approximately 9:00 p.m., and only after repeated requests.

176. Each Plaintiff was required to post a bond in the amount of $1,000 as a condition of release from custody.

177. The bond required of each Plaintiff exceeded by twofold the maximum statutory monetary penalty applicable to the charge underlying each Plaintiff's arrest, as described in paragraph 75.

178. The bonding party for each Plaintiff tendered cash in approximately the amount required to satisfy the bond and associated fees.

179. Harrison County personnel applied an exact-change-only cash-receipt policy and refused to accept the cash tender notwithstanding that the tender exceeded the amount due.

180. As a direct and proximate result of the exact-change-only cash-receipt policy described in the preceding paragraph, each Plaintiff was detained at the Harrison County Adult Detention Center for an additional approximately two hours, into the night, while the bonding party procured exact change.

## L. Defendant Poulos's May 5, 2026 Conduct

181. Prior to May 5, 2026, Witness J.P. was both a customer of Defendant Poulos in connection with insurance services and a former Code Enforcement employee of the City of Biloxi who had worked directly under the supervision of Defendant Tara Ramage.

182. On a date prior to May 5, 2026, J.P. terminated her insurance arrangement with Defendant Poulos.

183. On May 5, 2026, Defendant Poulos placed several telephone calls to J.P., switching to different telephone numbers when prior calls were unsuccessful in reaching her.

20

184. During those communications, Defendant Poulos stated to J.P. that he had that day filed complaints against Plaintiff Fusco with members of the United States military.

185. During those communications, Defendant Poulos stated to J.P. that he had been speaking by telephone with members of the United States military regarding Plaintiff Fusco.

186. During those communications, Defendant Poulos stated to J.P. that Plaintiff Fusco "messed with the bull and now he gets the horns."

187. During those communications, Defendant Poulos stated to J.P. that he had participated in the actions that led to the arrests of Plaintiffs.

188. Defendant Poulos disseminated the image described in the preceding paragraph to followers of his Facebook page.

189. Defendant Joanne Poulos is the spouse of Defendant Samuel Poulos.

190. Defendant Joanne Poulos has claimed authorship of at least one publication targeting Plaintiffs on the Facebook ecosystem comprising the Operation Icebreaker / Biloxi Civility Watchdog pages and the Samuel Poulos personal Facebook page.

191. Defendant Joanne Poulos has engaged in publicly documented conduct of a racially-charged character directed at a Black individual, the documentary evidence of which has been preserved and published.

192. Defendant Joanne Poulos has, through Facebook groups under her control or to which she contributes content, accused Plaintiffs of falsifying facts published on Plaintiffs' journalism platforms.

## M. The Selective-Disclosure Scheme by Defendants McMahan and Thacker

193. Defendants Catherine McMahan and Stacy Thacker are City of Biloxi employees responsible for the custody of and statutory response to public-records requests, including requests for records filed with the Biloxi Municipal Court Clerk.

194. On April 28, 2026, prior to any public disclosure on the Biloxi Municipal Court docket, the Operation Icebreaker operator possessed and disclosed to Petrini the substance of

Tara Ramage's charging affidavit and the recusal status of the Biloxi Municipal Court judges identified thereon, as described in paragraph 79.

195. At the time of the disclosures described in the preceding paragraph, the affidavit and recusal information were accessible only to records-custodian personnel of the City of Biloxi, including Defendants McMahan and Thacker.

196. On April 29, 2026, prior to the May 5, 2026 arrests, Plaintiff Fusco submitted a Mississippi Public Records Act request to the City of Biloxi seeking copies of "criminal affidavits filed in municipal court between 8 April 2026 and 29 April 2026 against Jarrod Fusco and Yuri Petrini."

197. After the May 5, 2026 arrests, Plaintiffs further submitted public-records requests to the City of Biloxi seeking the charging affidavits, supporting documents, warrants, and related records underlying their arrests.

198. The Mississippi Public Records Act, Miss. Code Ann. § 25-61-5(1)(a), requires a public body to produce responsive records or deny the request within seven working days of receipt.

199. Defendants McMahan and Thacker did not produce the records requested by Plaintiffs within the time period required by Miss. Code Ann. § 25-61-5(1)(a) and have not produced them as of the date of this Amended Complaint.

200. The records sought by Plaintiffs are the documents that formed the basis for the warrants used to arrest Plaintiffs and the documents Plaintiffs require to defend themselves in the underlying criminal proceeding in Cause No. 260301169.

201. Defendants McMahan and Thacker's withholding from Plaintiffs of the same affidavit and docket information that the records-custodian office had previously made available to the Operation Icebreaker operator constitutes selective disclosure of public records on the basis of the requestor's identity and the requestor's exercise of protected First Amendment activity.

## N. Witness J.P.'s Pre-Suit Disclosures

202. J.P. formerly served as a Code Enforcement Officer of the City under Tara Ramage's direct supervision.

203. Tara Ramage maintained sexual relationships with multiple residents of the City whose code-enforcement matters she was adjudicating.

204. Tara Ramage spoke openly during City office hours, in the presence of her coworkers, about the sexual relationships described in the preceding paragraph.

205. Tara Ramage maintained a sexual relationship with Defendant Jerry Creel.

206. J.P. reported Tara Ramage's misconduct to Jill Poll in Human Resources.

207. Defendant Jerry Creel terminated J.P.'s employment after the report described in the preceding paragraph.

208. On March 5, 2026, Petrini transmitted by electronic mail a formal Press Inquiry — Request for Comment to Defendant Michael Whitehead at Michael.Whitehead@pmp.org and to City of Biloxi Chief Administrative Officer Richard Weaver at rweaver@biloxi.ms.us.

209. The March 5, 2026 Press Inquiry identified Petrini as an investigative journalist and publisher of peoplevsbiloxi.com, Society of Professional Journalists Member No. 100082805.

210. The March 5, 2026 Press Inquiry asked, on the record, whether Tara Ramage had engaged in sexual relationships with City residents over whom she was simultaneously exercising code-enforcement authority.

211. The March 5, 2026 Press Inquiry expressly asked whether Defendant Jerry Creel was aware of those relationships.

212. The March 5, 2026 Press Inquiry set a response deadline of 5:00 p.m. Central Time, Friday, March 6, 2026, and stated that any response would be published in full.

213. Neither Defendant Whitehead nor CAO Weaver provided any response to the March 5, 2026 Press Inquiry within the deadline set therein or thereafter.

23

214. The March 5, 2026 Press Inquiry placed Defendants Whitehead and the City of Biloxi on actual notice — fifty-five days before the April 29, 2026 warrant was signed and sixty-one days before the May 5, 2026 arrest — of the factual basis for Petrini's journalism concerning Tara Ramage.

215. The factual allegations concerning Defendant Tara Ramage set forth above reflect content published by Petrini on Petrini's journalism platform peoplevsbiloxi.com.

216. The factual allegations described in the preceding paragraph relate exclusively to Tara Ramage's conduct in her official capacity as a City Code Enforcement employee under color of state law.

217. Each factual allegation concerning Defendant Tara Ramage set forth above is corroborated by the direct personal knowledge of Witness J.P. and by additional former Code Enforcement employees of the City of Biloxi who served alongside Defendant Tara Ramage and who have provided pre-suit information to Petrini concerning that conduct.

218. The factual allegations concerning Defendant Tara Ramage set forth above are further corroborated by the absence of any denial, qualification, or counter-statement from Defendant Whitehead or from City of Biloxi Chief Administrative Officer Richard Weaver in response to the March 5, 2026 Press Inquiry set forth above.

219. In the April 28-29, 2026 chat communications between the Operation Icebreaker operator and Petrini set forth above, the Operation Icebreaker operator — acting on behalf of Defendant Tara Ramage — characterized Petrini's reporting concerning Tara Ramage as "two articles" published on Petrini's journalism platform.

## O. The Three-Phase Electrical-Permit Denial and Manufactured Zoning Proceeding

220. Plaintiff Petrini owns the property at 287 Bohn Street / 929 Division Street in Biloxi (Parcel ID 0812D-02-006.000) in fee simple in his personal name, having acquired title by quitclaim deed from Megalopolis Two, LLC, and possesses standing to bring the claims related to that property pleaded in this Complaint. The City of Biloxi has issued the property a

"Contractor Headquarters" business license. The property is zoned Regional Business (RB), within which three-phase electrical service is permitted.

221. On January 22, 2026, an application for an electrical permit to substitute the electrical panel at the property and install three-phase electrical service was submitted to the Biloxi Building Department. The application sought an electrical-panel substitution; it neither requested nor required any change in the zoning, use, or classification of the property.

222. On January 23, 2026, Defendant Jerry Creel, in his capacity as Biloxi Building Official, issued a written response asserting that "manufacturing other than retail manufacturing requires Industrial Zoning" and stalling the application by demanding additional information. On the same day, Defendant Michael Whitehead, attorney representing the City, transmitted a cover letter to Plaintiff Petrini accompanying the Creel response and threatening Plaintiff Petrini with contempt under a protective order entered by Magistrate Judge Myers in Case 1:25-cv-00178 — an order regulating contact, not Plaintiff Petrini's right to submit permit applications.

223. On February 5, 2026, attorney J. Henry Ros, on behalf of the City, issued a letter purporting to reframe Plaintiff Petrini's position as an "admission" that the property is "being used for fabrication purposes" outside the scope of permitted uses in the RB zoning district, and directing Plaintiff Petrini to "appeal to the Zoning Board of Adjustments and Appeals."

224. On February 6, 2026, Plaintiff Petrini timely filed a Notice of Appeal to the Biloxi Zoning Board of Adjustments and Appeals pursuant to Biloxi Land Development Ordinance § 23-8-2. The appeal was docketed as Case No. 26-017-BZA, and the Biloxi Planning Commission scheduled a public hearing for 2:00 p.m. on March 19, 2026, at the Community Development office at 676 Dr. Martin Luther King, Jr. Boulevard.

225. The City of Biloxi caused a public-hearing sign to be erected on the property stating, in handwritten text, "APPEAL of Directors Decision Pertaining to Specific USE of the Property." The sign mischaracterized the underlying application, which concerned only an electrical-panel substitution and did not concern the use of the property.

226. On March 10, 2026, Defendant Whitehead wrote to Plaintiff Petrini: "I will forward you the applications on the Zoning Map change when I receive them. There will [be] two charges, each in the amount of $175.00. I will need a check for $350.00 and the two applications filled out." Plaintiff Petrini had neither requested nor required any change in the zoning map of the property.

227. The City of Biloxi never issued a formal Interpretation under Biloxi Land Development Ordinance § 23-2-4(R) classifying Plaintiff Petrini's activities as "manufacturing," and never issued a Notice of Violation under § 23-9-5(D)(2)(b). The "manufacturing classification" was asserted by correspondence only, without the procedural prerequisites the Land Development Ordinance requires for any final administrative determination concerning use, zoning classification, or compliance with the Code.

228. Between March 2, 2026 and April 8, 2026, the City of Biloxi advanced written settlement proposals to Plaintiff Petrini concerning, among other matters, the three-phase electrical-permit denial and the related Case No. 26-017-BZA proceeding. The City's April 8, 2026 written proposal conditioned the City's resolution of the three-phase electrical-permit denial upon Plaintiff Petrini's release of pending and future civil-rights claims against the City and its officials, and upon Plaintiff Petrini's express waiver of all claims relating to the historic-district designation applicable to the property.

229. Each action described in this Section was undertaken contemporaneously with Plaintiff Petrini's three pending federal civil-rights actions against the City of Biloxi and Plaintiff Petrini's ongoing publication of investigative journalism critical of the City on his platform peoplevsbiloxi.com.

## IV. CLAIMS FOR RELIEF

### A. Count I — First Amendment: Viewpoint Discrimination

**(Against Glavan, Gilich, and the City of Biloxi; by Petrini and Fusco)**

26

230. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

231. Color of state law. Glavan and Gilich acted as Council President and Mayor of the City during the March 3, 2026 Council meeting; the City is suable under 42 U.S.C. § 1983.

232. Designated public forum with suspended rules. The citizen-comment period was a designated public forum opened for political expression, conducted under suspended Rules of Order — eliminating any content-neutral procedural overlay capable of justifying selective removal.

233. Viewpoint-based suppression of core political speech. Petrini addressed the Council on a matter of public concern, criticizing Defendant Mayor Gilich. Defendant Glavan, presiding, interrupted Petrini and threatened his removal based on the content of Petrini's speech. When Plaintiff Fusco rose and stated "Point of order" as a parliamentary objection to Glavan's threat, Defendant Mayor Gilich ordered both Plaintiffs removed by stating on the record, "TAKE THEM OUT". Defendant De Back executed the order, physically removing Fusco from the chamber. No other attendee or speaker was removed for similar conduct.

234. Injury and chilling effect. Glavan's interruption consumed Petrini's allotted citizen-comment time, and Petrini's citizen comments were then terminated outright — preventing Petrini from completing the message he intended to deliver on matters of public importance concerning the City and its officials. Plaintiff Fusco — present as a journalist and as Petrini's parliamentary objector — was physically removed by the Chief of Police from a public proceeding documented on official City video and reported by WLOX. Neither Plaintiff now feels capable of safely attending or speaking at Biloxi Council meetings. The chilling effect is compounded by the Operation Icebreaker enterprise's privileged, pre-public-docket disclosures — accurately quoting Tara Ramage's April 28 charging affidavit and disclosing the recusal status of the Biloxi Municipal Court judges before any public-docket entry, asserting active warrants against Plaintiffs before any public disclosure, and reporting Biloxi Police Department coordination on the impending arrest — each true, each accurate, and each requiring privileged information that could only have come from coordinated leakage among the prosecutor's office,

27

the Biloxi Municipal Court records-custodian office, and the Mayor's office; by the March 31, 2026 CIU Intelligence Bulletin directing officers to "develop probable cause" against Petrini; and by the May 5, 2026 arrests — each of which forecloses Plaintiffs' continued exercise of their First Amendment rights of public-meeting attendance and citizen petition.

235. Damages. Compensatory, nominal, punitive (against individual-capacity Defendants), declaratory and injunctive relief, and attorney's fees under 42 U.S.C. § 1988.

236. Shield-defeating. The right to speak in a designated public forum free of viewpoint-based suppression was clearly established; no reasonable Mayor, Council President, or Chief of Police could have believed the alleged conduct lawful.

## B. Count II — First Amendment: Freedom of the Press

### (Against Gilich, De Back, and the City of Biloxi; by Petrini and Fusco)

237. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

238. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

239. Press status. Each Plaintiff publishes an active municipal-political journalism platform with substantial readership; is registered with the City of Biloxi as a member of the media receiving Mayor's office briefings and public announcements on the same basis as other City-registered media; and is a credentialed member of the Society of Professional Journalists.

240. Government adverse action. Defendant Mayor Gilich ordered the physical removal of Plaintiff Fusco — present at the March 3, 2026 Council meeting in his journalistic capacity. Defendant De Back, Chief of Police, executed that order.

241. Press-function impairment. Fusco was prevented from observing or reporting on the remainder of the proceeding.

242. Chilling effect on Petrini-journalism platform. Petrini's journalism platform peoplevsbiloxi.com has been the subject of the surveillance, CIU bulletin, and criminal-process retaliation pleaded in the Statement of Facts above.

243. Causation. Fusco's removal directly followed his parliamentary objection to Glavan's threat against Petrini. The retaliation against Petrini's platform directly followed each successive publication on peoplevsbiloxi.com.

244. Damages. Compensatory, nominal, punitive (individual-capacity Defendants only), declaratory and injunctive relief, and attorney's fees under 42 U.S.C. § 1988.

245. Shield-defeating. The right of a journalist to attend and report on a public government proceeding was clearly established.

## C. Count III — First Amendment: Retaliation

**(Against Glavan, Gilich, Creel, De Back, Whitehead, Tara Ramage, Schroeder, Johnson, Lusk, McMahan, Thacker, and the City of Biloxi; by Petrini and Fusco)**

246. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

247. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

248. Protected activity (Petrini). Petrini's protected activity includes the filing and prosecution of three federal civil-rights actions against the City of Biloxi; the publication of investigative journalism on peoplevsbiloxi.com; the March 3, 2026 citizen-comment speech; and the March 5, 2026 Press Inquiry.

249. Protected activity (Fusco). Fusco's protected activity includes the operation of Biloxi Politics Uncensored, his active-duty status as a United States Air Force Master Sergeant, his March 3, 2026 parliamentary objection, the April 26, 2026 journalism counter-post, and the April 29, 2026 Mississippi Public Records Act request.

250. Adverse actions (Petrini). The June 30, 2025 stop-work order; the November 7, 2025 Whitehead surveillance; the March 31, 2026 Whitehead visit and CIU Bulletin; the April 28, 2026 charging affidavit; the April 29, 2026 Lusk-signed warrant; the May 5, 2026 arrest, four-occasion handcuffing including feet-restraint despite disability disclosure; nine-hour HCDC detention, body-cavity search, medication denial, and delayed phone access; the $1,000 bond on

a $500-maximum-penalty charge; the May 5, 2026 gag order; the withholding of records from Plaintiffs that were leaked to the Operation Icebreaker operator.

251. Adverse actions (Fusco). The November 2024 Creel-to-Moseley email; the March 10, 2026 Keesler contact; the Colonel Robinson memorandum; Defendant Glavan's paid delivery of harassing materials to Keesler; the March 3, 2026 chamber removal; the April 28, 2026 charging affidavit arising from Fusco's act of sharing journalism; the April 29, 2026 warrant; the May 5, 2026 arrest, handcuffing, bond, body-cavity search, denial of telephone access, and nine-hour detention; the fabricated booking image; and Defendant Samuel Poulos's military complaints against Fusco.

252. Chilling effect. Each adverse action listed above would deter a person of ordinary firmness from continuing to engage in the protected activity described above.

253. Causation. Causation is established by temporal proximity (the stop-work order issued 24 days after the filing of Case 178; the CIU Bulletin issued the same day as Petrini's painting and article; the warrant signed the same day Petrini transmitted the Notice and Demand; the arrests carried out after non-response to the Notice and Demand); by the absence of legitimate non-retaliatory justification; and by the convergence of multiple state and joint-actor Defendants on the same Plaintiffs.

254. Damages. Compensatory, nominal, punitive (individual-capacity Defendants only), declaratory and injunctive relief, and attorney's fees under 42 U.S.C. § 1988.

255. Shield-defeating. The right to be free of governmental retaliation for First Amendment activity was clearly established. Each Defendant was on actual notice — through the public-record character of Plaintiffs' three federal civil-rights cases, the March 5, 2026 Press Inquiry, and the April 29, 2026 Notice and Demand — that the conduct violated clearly established rights.

**D. Count IV — First Amendment: Retaliatory Prosecution**

**(Against Lusk, Tara Ramage, Schroeder, Harenski, Chastain, Cavanaugh, Samuel Poulos, Joanne Poulos, and the City of Biloxi; by Petrini and Fusco)**

256. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

257. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

258. Protected activity. Plaintiffs' protected activity is as pleaded in the Statement of Facts above and 247.

259. Criminal process initiated. The April 28, 2026 charging affidavits against Petrini and Fusco; the April 29, 2026 Lusk-signed warrant; the May 5, 2026 arrests; the May 5, 2026 gag order; and the $1,000 bond imposed on each Plaintiff.

260. Leverage to extract abandonment of protected activity. The Operation Icebreaker operator — acting on behalf of Defendant Tara Ramage — offered Petrini cessation of further publication and disclosure of the operator's true identity in exchange for Petrini's removal of specific journalism. The operator admitted firsthand contact with the affiant Tara Ramage and with the Biloxi Police Department concerning the warrant.

261. Targeted-content identification. The four-name protected-party group (Tara Ramage, Toni, Christy, Kerry) named by the operator in nine separate messages across approximately fourteen hours identifies the precise journalistic content the prosecution was intended to suppress.

262. No probable cause. The charge under Mississippi Code Annotated § 97-29-45(a) was forwarded for prosecution without prior review and approval by any City Prosecutor; without notice and cure-opportunity as Defendant Harenski had assured; and was signed within twenty-four hours by a judge lacking statutory authority over Biloxi-side prosecutions.

263. Damages. Compensatory, nominal, punitive (individual-capacity Defendants only); declaratory relief; injunctive relief enjoining further prosecution; attorney's fees under 42 U.S.C. § 1988.

31

264. Shield-defeating — Lusk. Defendant Lusk acted in the clear absence of all jurisdiction within the meaning of the clear-absence-of-jurisdiction doctrine. The jurisdictional defects pleaded in the Statement of Facts above each independently establish that Lusk's signature on the April 29, 2026 warrant lacked any statutory or constitutional source of authority. No claim of judicial immunity is available to Lusk.

265. Shield-defeating — Harenski. Defendant Harenski's conduct in (a) failing to honor his October 1, 2025 settlement assurances and (b) forwarding the April 28 charging affidavit for prosecution without his promised review is administrative and extra-prosecutorial in nature and falls outside any function entitled to absolute prosecutorial immunity.

## E. Count V — First Amendment: Prior Restraint

**(Against De Back, Whitehead, Lusk, and the City of Biloxi; by Petrini)**

266. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

267. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

268. Two independent forward-looking restraints — each standing alone constitutes a prior restraint on Plaintiff Petrini's protected First Amendment expression: **(a)** the March 31, 2026 CIU Bulletin, which by its own four corners admits that there are "no criminal charges currently outstanding" against Petrini, that Petrini "poses an undetermined threat," and that the Biloxi Police Department did not know "if he has access to weapons" — yet nonetheless directs officers to "develop reasonable suspicion or probable cause to initiate enforcement contact" with Petrini while contradictorily instructing them to "do not stop or detain" him; and **(b)** the May 5, 2026 gag order issued by Defendant Lusk in *City of Biloxi v. Petrini*, Cause No. 260301169, signed in the clear absence of all jurisdiction for the reasons pleaded above.

269. No judicial determination of unprotected status. Neither the CIU Bulletin nor any predicate of its issuance was subject to prior judicial determination that Petrini's announced political speech was unprotected.

270. Chilling effect. The bulletin and the gag order operate as forward-looking mechanisms designed to deter and prevent Plaintiff's future protected speech.

271. Damages. Compensatory, nominal, punitive (individual-capacity Defendants only); declaratory and permanent injunctive relief; bulletin recall, destruction, and Social Security number expungement; vacatur of the gag order; attorney's fees under 42 U.S.C. § 1988.

272. Shield-defeating. The prohibition on prior restraints on speech without judicial process was clearly established. The clear-absence-of-jurisdiction doctrine defeats any judicial-immunity claim by Defendant Lusk.

## F. Count VI — First Amendment: Access to Courts

### (Against McMahan, Thacker, and the City of Biloxi; by Petrini and Fusco)

273. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

274. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

275. Non-frivolous underlying defense. Plaintiffs face active criminal prosecution in Cause No. 260301169 and require access to the charging affidavits, supporting documents, warrants, and related records to defend themselves.

276. Frustration of access. Defendants McMahan and Thacker, the City of Biloxi's records custodians, failed to produce the requested records within the seven-working-day window required by Mississippi Code Annotated § 25-61-5(1)(a) and have not produced them as of the date of this Amended Complaint.

277. Selective disclosure. The same records were leaked to the Operation Icebreaker operator before any public docket disclosure, establishing that the records were accessible to City records-custodian personnel and were intentionally withheld from Plaintiffs.

278. Actual injury. Plaintiffs are unable to mount adequate defenses in the underlying criminal proceeding without the withheld records.

33

279. Damages. Compensatory, nominal, punitive (individual-capacity Defendants only); injunctive relief compelling production; attorney's fees under 42 U.S.C. § 1988.

280. Shield-defeating. The First Amendment right of access to courts and the Fourteenth Amendment due-process right to information necessary for self-defense were clearly established.

## G. Count VII — Fourth Amendment: Unreasonable Seizure (March 3, 2026 Chamber Removal)

### (Against De Back, Gilich, and the City of Biloxi; by Fusco)

281. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

282. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

283. Seizure. Defendant De Back, Chief of Police, physically seized Plaintiff Fusco and removed him from the Council chamber on Defendant Mayor Gilich's command.

284. Show of authority. A reasonable person in Fusco's position would not have felt free to remain in the chamber under the physical control of the Chief of Police.

285. Unreasonableness. No criminal charge was announced, no citation was issued, no arrest was effected, and no neutral conduct rule was cited — because the Council had suspended its Rules of Order.

286. No probable cause. Fusco's only conduct was stating "Point of order", which is protected speech and not a criminal offense.

287. Damages. Compensatory, nominal, punitive (individual-capacity Defendants only); declaratory relief; attorney's fees under 42 U.S.C. § 1988.

288. Shield-defeating. The right of a person attending a public meeting to be free of unreasonable seizure was clearly established.

34

**H. Count VIII — Fourth Amendment: Unreasonable Seizure (May 5, 2026 Arrests Under Void Warrant)**

**(Against Lusk, Tara Ramage, Schroeder, Johnson, and the City of Biloxi; by Petrini and Fusco)**

289. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

290. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

291. Seizure. On May 5, 2026, Plaintiff Petrini was arrested by Defendant Officer Johnson and Plaintiff Fusco was arrested by officers of the Biloxi Police Department. Both Plaintiffs were detained at the Harrison County Adult Detention Center for approximately nine hours.

292. Warrant void ab initio. The April 29, 2026 warrant signed by Defendant Lusk was issued in the clear absence of all jurisdiction. The "Special Appointment" notation on the warrant face is the warrant's own admission of irregularity. No Mississippi statutory mechanism for judicial substitution was invoked. No City of Biloxi ordinance creates the position of pro tempore municipal judge. Defendant Lusk is the appointed Municipal Court Judge for D'Iberville, a municipality distinct from Biloxi.

293. Affidavit forwarded without required review. The April 28, 2026 charging affidavit underlying the warrant was forwarded for prosecution without prior review and approval by any City Prosecutor, in breach of the October 1, 2025 settlement assurance.

294. Temporal impossibility. No documented mechanism could have legitimately substituted a Biloxi-side judicial officer in the 24-hour window between the April 28 affidavit and the April 29 warrant.

295. Damages. Compensatory, nominal, punitive (individual-capacity Defendants only); declaratory and injunctive relief; attorney's fees under 42 U.S.C. § 1988.

35

296. Shield-defeating — Lusk. Clear-absence-of-jurisdiction doctrine; no judicial immunity.

297. Shield-defeating — Johnson, Schroeder. The right to be arrested only on a valid warrant supported by probable cause was clearly established. The "Special Appointment" notation on the warrant face was visible to any reasonable arresting officer.

## l. Count IX — Fourth Amendment: Malicious Procurement of Warrant

### (Against Tara Ramage, Schroeder, Harenski, and Lusk; by Petrini and Fusco)

298. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

299. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

300. Affidavits. Defendant Tara Ramage executed a charging affidavit against Petrini on April 28, 2026; a charging affidavit was also executed against Fusco the same date based on Fusco's act of sharing on Biloxi Politics Uncensored an article published on peoplevsbiloxi.com on March 6, 2026. Defendant Schroeder notarized both affidavits.

301. Material falsity / omission. The factual allegations concerning Defendant Tara Ramage that form the predicate of the criminal charges are corroborated by Witness J.P. and additional former Code Enforcement employees and were placed on actual notice of Defendant Whitehead and CAO Weaver through the March 5, 2026 Press Inquiry to which neither responded. The journalism cannot be both factually true and the basis for a § 97-29-45(a) prosecution.

302. Statutory safe-harbor preclusion. Mississippi Code Annotated § 97-29-45(8) provides that "news organizations shall not be criminally liable under this section." Each Plaintiff is the founder or publisher of a municipal-political journalism platform with substantial readership, is registered with the City of Biloxi as a member of the media, and is a credentialed member of the Society of Professional Journalists. Plaintiffs are therefore "news organizations" within the meaning of § 97-29-45(8), and the charges under § 97-29-45(a) against Plaintiffs are

36

facially precluded by subsection (8). Defendants Tara Ramage, Schroeder, Harenski, and Lusk procured the warrant in disregard of the statutory safe-harbor on the face of the very statute charged.

303. Knowing or reckless. Defendant Tara Ramage had personal knowledge that the journalism described her actual conduct in her official capacity under color of state law.

304. Material to probable cause. The affidavit's content was the sole basis for the April 29, 2026 warrant. Without the false framing, no probable cause existed.

305. Prosecutorial review missing and temporal impossibility of legitimate substitute-judge process. Defendant Harenski's promised pre-warrant review did not occur. The affidavit was sworn on April 28, 2026; the warrant was signed by Defendant Lusk on April 29, 2026 — less than twenty-four hours later. A legitimate substitute-judge procedure under Mississippi law would have required, at minimum, the following sequence: in-person swearing of the affidavit before a notary; routing of the affidavit through the Biloxi Municipal Court Clerk; recognition of the structural conflict that disqualified all three sitting Biloxi Municipal Court Judges; petition to the Mississippi Supreme Court Chief Justice for a § 9-1-105 special-judge appointment; drafting, signature, transmission, and docketing of an appointment order; transmission of the affidavit to the appointed special judge; that judge's review of the affidavit; and a probable-cause determination supported by oath. No documentation of any step in that sequence exists in the record. The 24-hour window forecloses any legitimate § 21-23-9 or § 9-1-105 substitution process having occurred.

306. Damages. Compensatory, nominal, punitive (individual-capacity Defendants only); attorney's fees under 42 U.S.C. § 1988.

307. Shield-defeating. As to Tara Ramage and Schroeder, the right to be free of arrest on a knowingly false affidavit was clearly established. As to Lusk, the clear-absence-of-jurisdiction doctrine. As to Harenski, his settlement-breach and affidavit-procurement conduct are extra-prosecutorial.

37

**J. Count X — Fourth Amendment: Pretextual Targeting Directive**

**(Against De Back and the City of Biloxi; by Petrini)**

308. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

309. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

310. Pre-identified target. The March 31, 2026 CIU Bulletin identified Petrini by name, photograph, Social Security number, driver license number, four vehicles, and home address.

311. Develop-probable-cause instruction. The bulletin instructed Biloxi Police Department officers to "develop probable cause to initiate enforcement contact" with Petrini.

312. Internal exoneration. The bulletin simultaneously contained the recommendation that officers "do not stop or detain" Petrini — establishing that the City's own analysts found no basis for enforcement contact.

313. Content-based and retaliatory targeting. The bulletin issued within hours of Petrini's same-day painting and journalism publication and was sourced from "third-party information" that no person other than Defendant Whitehead provided.

314. Damages. Compensatory, nominal, punitive (individual-capacity Defendants only); declaratory and permanent injunctive relief; bulletin recall + Social Security number expungement; attorney's fees under 42 U.S.C. § 1988.

315. Shield-defeating. The right to be free of pretextual police targeting was clearly established. Defendant De Back is the final policymaker for police operations.

**K. Count XI — Procedural Due Process: Settlement Breach**

**(Against Harenski, Ready, and the City of Biloxi; by Petrini)**

316. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

317. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

38

318. Legitimate-expectation interest. On October 1, 2025, Defendant Harenski transmitted to Petrini a written settlement letter containing three express assurances: (a) notice and opportunity to cure prior to charges; (b) City Prosecutor review and approval of any affidavit before warrant; and (c) "Judge Ready (or, in her absence, another Municipal Court Judge)" probable-cause review.

319. Consideration. Petrini accepted the assurances, dismissed Defendant Harenski without prejudice from Cause No. 1:25-cv-00254-LG-RPM, and agreed not to name Harenski in any amended complaint in that case.

320. Deprivation by breach. On April 28-29, 2026, every assurance was breached: no notice or cure-opportunity was given; the affidavit was forwarded for prosecution without any City Prosecutor's review; the warrant was signed not by Ready or another Biloxi Municipal Court Judge but by Defendant Lusk, the appointed Municipal Court Judge of D'Iberville, not Biloxi.

321. Three-judge structural impossibility. All three sitting Biloxi Municipal Court Judges (Ready, Simpson, Steele) are paid through the same Abide-controlled compensation regime. The "Judge Ready (or another Biloxi MC Judge)" assurance was structurally impossible to perform on October 1, 2025 because every Biloxi MC judge was already disqualified.

322. Inadequate process. No process was given before the April 29, 2026 warrant issued. The maximum process required for criminal charges was not approached.

323. Damages. Compensatory, nominal, punitive (individual-capacity Defendants only); declaratory and injunctive relief; specific performance of the settlement protections; attorney's fees under 42 U.S.C. § 1988.

324. Shield-defeating — Harenski. The settlement-negotiation conduct and the affidavit-forwarding-without-review are administrative and contractual functions outside the prosecutorial-immunity scope.

325. Shield-defeating — Ready. Ready is pleaded for her failure to designate a non-captured successor Biloxi Municipal Court Judge — a non-judicial administrative act — not for her recusal itself.

**L. Count XII — Procedural Due Process: Recusal Vacuum and Structural Capture**

**(Against Lusk, Ready, Harenski, and the City of Biloxi; by Petrini and Fusco)**

326. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

327. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

328. Liberty interest. Plaintiffs have a federal due-process liberty interest in a neutral and detached magistrate's review of any warrant for their arrest.

329. Structural capture of Lusk. Defendant Lusk's compensation as a substitute Biloxi Municipal Court judge is administered under the same regime that compensates the regular Biloxi judges. Biloxi City Council Resolution No. 635-19 provides that judicial-officer compensation is "payable upon presentation of Invoice subject to approval by the Director of the Legal Department". At all relevant times Peter C. Abide was that Director and was a named individual-capacity defendant in three federal civil-rights actions brought by Petrini.

330. Three-judge regime-wide capture. All three sitting Biloxi Municipal Court Judges (Ready, Simpson, Steele) flow through the same Abide-approval pipeline. The Biloxi Municipal Court bench is structurally captured at 100% financial dependency.

331. Lusk's professional embedding. Defendant Lusk is a practicing Biloxi criminal-defense attorney whose primary law practice is in Biloxi at an office on the same street as Biloxi City Hall, who regularly attends Biloxi Businessmen's Club meetings alongside Peter Abide, Defendant Glavan, and Defendant Mayor Gilich.

332. Recusal vacuum unfilled. The three-judge structural disqualification was knowable on October 1, 2025 when Defendant Harenski signed the settlement letter assuring "Judge Ready (or another Municipal Court Judge)" review. Either Harenski knew the assurance was impossible to perform, or the City substituted Lusk after learning the regime-wide capture problem. Each path = no neutral process.

40

333. Inadequate process. No neutral process was given before the April 29, 2026 warrant issued.

334. Damages. Compensatory, nominal, punitive (individual-capacity Defendants only); declaratory and injunctive relief; vacatur of the April 29, 2026 warrant; attorney's fees under 42 U.S.C. § 1988.

335. Shield-defeating — Lusk. Clear-absence-of-jurisdiction doctrine.

336. Shield-defeating — Ready. Pleaded for non-judicial administrative conduct.

337. Shield-defeating — Harenski. Settlement-breach conduct is administrative and contractual.

## M. Count XIII — Equal Protection: Class-of-One and Selective Disclosure

**(Against Glavan, Gilich, McMahan, Thacker, and the City of Biloxi; by Petrini and Fusco)**

338. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

339. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

340. Comparator (Council Meeting). Plaintiff Fusco was similarly situated to every other person present in the Council chamber on March 3, 2026; unlike them, he was physically removed by the Chief of Police on the Mayor's command. Plaintiff Petrini was similarly situated to every other citizen who spoke or could have spoken during citizen comments; unlike any other speaker, Petrini was interrupted and silenced for the content of his remarks.

341. No rational basis (Council Meeting). The Council had suspended its Rules of Order. No rule, statute, or ordinance was cited for the removal. The sole distinguishing characteristic of Plaintiffs was the content and viewpoint of their speech.

342. Selective disclosure (records). The records-custodian office leaked the substance of the April 28, 2026 affidavit and the recusal information to the Operation Icebreaker operator but denied the same records to Plaintiffs when requested under the Mississippi Public Records Act.

41

343. No rational basis (records). There is no rational governmental interest in disclosing public records selectively based on the requester's identity or the requester's political viewpoint.

344. Damages. Compensatory, nominal, punitive (individual-capacity Defendants only); declaratory and injunctive relief; attorney's fees under 42 U.S.C. § 1988.

345. Shield-defeating. The right of similarly situated persons to be treated alike, free of viewpoint-based discrimination, was clearly established.

### N. Count XIV — Substantive Due Process: Shocks the Conscience

**(Against Lusk, Tara Ramage, Schroeder, Harenski, Whitehead, the City of Biloxi, and Harrison County; by Petrini and Fusco)**

346. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

347. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

348. Executive conduct. Each Defendant named in this count exercised executive, prosecutorial, or magisterial authority on behalf of the City of Biloxi or Harrison County.

349. Shocking-conduct cluster. The conduct that shocks the conscience includes the coordinated April 28, 2026 affidavit + Council Meeting + Operation Icebreaker announcement; the issuance of a warrant within 24 hours by a judge with no statutory authority; the pre-public-docket leak of the affidavit content to a partisan Facebook page operator; the breach of the October 1, 2025 settlement protections; the May 5, 2026 nine-hour custody of self-surrendered misdemeanants — including handcuffing of a disclosed-disability plaintiff, suspicionless ionizing-radiation X-ray without consent or medical-staff explanation, visual body-cavity strip search after pat-down had disclosed no contraband, repeat booking, denial of medication, and denial of telephone access; the imposition of $1,000 bond on a charge carrying a $500 maximum statutory penalty followed by an additional approximately two-hour detention under an exact-change-only cash-receipt policy; and the post-arrest withholding from Plaintiffs of the very records that had been pre-arrest leaked to Plaintiffs' adversaries.

350. Causation. Each shocking act was performed by, or with the direct participation of, the named Defendants.

351. Beyond merely wrongful. The combined conduct exceeds ordinary tortious behavior and reaches the threshold of conscience-shocking executive abuse.

352. Damages. Compensatory, nominal, punitive (individual-capacity Defendants only); declaratory and injunctive relief; attorney's fees under 42 U.S.C. § 1988.

353. Shield-defeating. Standard qualified-immunity rebuttal; clear-absence-of-jurisdiction doctrine for Lusk; extra-prosecutorial-conduct rebuttal for Harenski.

## O. Count XV — Eighth Amendment: Excessive Bail

### (Against Lusk and the City of Biloxi; by Petrini and Fusco)

354. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

355. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

356. Bail set. Each Plaintiff was required to post a bond in the amount of $1,000 as a condition of release from custody on May 5, 2026.

357. Statutory maximum penalty. Mississippi Code Annotated § 97-29-45 — the statute underlying the charging affidavits — carries a maximum statutory monetary penalty of $500.

358. Excessive. The bond required of each Plaintiff exceeded by twofold the maximum statutory monetary penalty applicable to the charge.

359. No individualized determination. The handwritten bond condition appears on the warrant face without any documented evidentiary hearing or individualized determination of flight risk or community danger.

360. Damages. Compensatory, nominal, punitive (individual-capacity Defendants only); declaratory and injunctive relief; reimbursement of bond costs; attorney's fees under 42 U.S.C. § 1988.

361. Shield-defeating. Clear-absence-of-jurisdiction doctrine defeats any judicial immunity claim by Defendant Lusk.

## P. Count XVI — Informational Privacy: SSN Distribution and Driver's Privacy Protection Act

### (Against De Back and the City of Biloxi; by Petrini)

362. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

363. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 (constitutional informational-privacy claim, under color of state law) and under 18 U.S.C. § 2724 (Driver's Privacy Protection Act civil action).

364. Privacy interest. Plaintiff Petrini had a legitimate expectation of privacy in his Social Security number, driver license number, photograph, home address, and the vehicle registrations of his former spouse.

365. Government disclosure. The March 31, 2026 CIU Bulletin contained all of the above personal data items and was distributed department-wide through the Biloxi Police Department's internal electronic communications system.

366. Vehicle data sourced from DMV records. Three of the four vehicles described in the bulletin are registered to Petrini's former spouse and not to Petrini. The data was obtained from state Department of Motor Vehicles records and disclosed for a purpose not authorized within the meaning of 18 U.S.C. § 2721.

367. Privacy outweighs public need. The City's own internal recommendation that officers "do not stop or detain" Petrini negates any law-enforcement necessity for the disclosure.

368. Multiplicity of violations. Each member of the Biloxi Police Department to whom the CIU Bulletin was distributed received a separate unauthorized disclosure of Plaintiff Petrini's protected motor-vehicle record within the meaning of 18 U.S.C. § 2721(a), and each constitutes a separate "violation" under 18 U.S.C. § 2724. The Bulletin further disclosed the DMV record of a separate DPPA-protected individual — Petrini's former spouse, whose vehicle registrations were

44

included — compounding the violations.

369. Damages. Compensatory damages; nominal damages; punitive damages against each individual-capacity Defendant; declaratory and injunctive relief, including Social Security number and DMV-data expungement from all law-enforcement databases; **statutory liquidated damages under 18 U.S.C. § 2724(b)(1) of not less than $2,500 per disclosure**, calculated cumulatively across each member of the Biloxi Police Department to whom the CIU Bulletin was distributed and across each separate DPPA-protected individual whose record was contained in the bulletin (Plaintiff Petrini and Petrini's former spouse); punitive damages under **18 U.S.C. § 2724(b)(2)** for willful or reckless disregard of the DPPA; attorney's fees and costs under **18 U.S.C. § 2724(b)(3)** and 42 U.S.C. § 1988.

370. Shield-defeating. The constitutional right to informational privacy and the DPPA's restrictions were clearly established.

## Q. Count XVII — 42 U.S.C. § 1985(2): Conspiracy to Obstruct Federal Litigation

**(Against Glavan, Gilich, Creel, Whitehead, Tara Ramage, Schroeder, Harenski, Lusk, McMahan, Thacker, Chastain, Cavanaugh, Samuel Poulos, Joanne Poulos, Ready, and the City of Biloxi; by Petrini and Fusco)**

371. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

372. Two or more conspirators. At all times relevant Plaintiffs were named parties in pending federal civil-rights actions against the City of Biloxi. The Defendants named in this count are two or more persons who conspired to deter or retaliate against Plaintiffs for their continued prosecution of those federal actions.

373. Conspiracy to obstruct federal litigation. Each of the following constitutes an overt act in furtherance of an agreement to obstruct Plaintiffs' federal litigation: the October 1, 2025 settlement assurances and their breach; the November 7, 2025 surveillance; the March 31, 2026 Whitehead visit and CIU Bulletin; the April 28, 2026 affidavits, Council note, and Operation Icebreaker announcements; the April 29, 2026 warrant signed in clear absence of jurisdiction; the

May 5, 2026 arrests, body-cavity searches, medication denial, telephone-access denial, and bond imposition; and the records-leak-but-records-deny scheme.

374. Agreement evidenced. The Operation Icebreaker operator's statements admitting firsthand contact with the affiant Tara Ramage, conveying her personal demands, and offering non-prosecution in exchange for journalism takedowns document the agreement.

375. Overt acts and injury. Plaintiffs were arrested, detained, body-cavity searched, denied medication and telephone access, bonded above the statutory ceiling, gagged from speaking, and denied records necessary for their defense.

376. Damages. Compensatory, nominal, punitive (individual-capacity Defendants only); declaratory and injunctive relief; attorney's fees under 42 U.S.C. § 1988.

377. Shield-defeating. § 1985(2) Clause 1 conspiracy to deter a federal party requires no class-based animus. Standard qualified-immunity, clear-absence-of-jurisdiction, and extra-prosecutorial-conduct rebuttals apply.

## R. Count XVIII — 42 U.S.C. § 1985(3): Equal-Protection Conspiracy

### (Against the same Defendants named in Count XVII; by Petrini and Fusco)

378. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

379. Two or more. As pleaded above.

380. Purpose to deprive equal protection. The conspirators acted to deprive Plaintiffs of equal protection in their access to public records, in their treatment by police, in their treatment by the Council, and in their treatment by the courts.

381. Class-based race-animus by the private-actor conspirators. Defendants Chastain, Glavan, Cavanaugh, and Samuel Poulos — acting jointly through the Operation Icebreaker enterprise and related private channels — engaged in race-based conduct that animates the § 1985(3) conspiracy: **(a)** the Operation Icebreaker page published harassment of Plaintiff Petrini, Plaintiff Fusco, and Ward 2 Councilmember Anthony Marshall of a racial character, including caricature drawings depicting Plaintiffs Petrini and Fusco as Black men notwithstanding that

46

neither Plaintiff is Black; **(b)** the "BUSTED" paid Facebook advertisement contained content of a racial character; **(c)** the May 3, 2026 post depicting Plaintiff Fusco in racialized caricature alongside a Keesler Air Force Base tag constituted racialized targeting of an active-duty service member; **(d)** the Operation Icebreaker enterprise published statements falsely asserting that Plaintiff Petrini is "unlawfully present" in the United States and present on an "H-1B visa" — when Petrini is in fact a Lawful Permanent Resident — constituting ancestry- and race-coded targeting characteristic of racial profiling; and **(e)** Defendant Joanne Poulos has engaged in publicly documented conduct of a racially-charged character directed at a Black individual, corroborating the racial-animus character of the conspiratorial cohort.

382. Animus animates conspiracy. The racial content evidences invidiously discriminatory class-based animus animating the conspiracy.

383. Overt acts and injury. As pleaded above.

384. Damages. Compensatory, nominal, punitive (individual-capacity Defendants only); declaratory and injunctive relief; attorney's fees under 42 U.S.C. § 1988.

385. Shield-defeating. As pleaded above.

## S. Count XIX — 42 U.S.C. § 1986: Neglect to Prevent

### (Against Gilich, De Back, Whitehead, and the City of Biloxi; by Petrini and Fusco)

386. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

387. Predicate § 1985 violation. The § 1985(2) and § 1985(3) violations pleaded in Counts XVII and XVIII are incorporated as predicates.

388. Knowledge. Each Defendant named in this count had actual notice of the § 1985 violations through (a) the March 5, 2026 Press Inquiry to Whitehead and CAO Weaver; (b) the April 29, 2026 Notice and Demand transmitted to Defendant Hon. Apryl Lee Ready, Hon. James Steele of the Biloxi Municipal Court, the Clerk of the Biloxi Municipal Court, the Municipal Prosecutor, Henry P. Ros and Zachary Cruthirds, Peter Abide, and Defendant Whitehead; and (c) the public-record character of Plaintiffs' three pending federal civil-rights cases.

47

389. Power to prevent. As Mayor (Gilich), Chief of Police (De Back), and as a municipal corporation (City), and as an attorney supervising City representation (Whitehead), each Defendant possessed authority to halt or remedy the underlying violations.

390. Failure to act. No Defendant intervened to stop or remedy the violations during the response windows specified in the Notice and Demand or thereafter.

391. Within one-year statute of limitations. This action is filed within one year of the underlying § 1985 violations.

392. Damages. Compensatory, nominal; declaratory and injunctive relief; attorney's fees under 42 U.S.C. § 1988.

393. Shield-defeating. § 1986 imposes an affirmative duty on those with power; failure to perform that duty gives rise to no qualified-immunity refuge.

## T. Count XX — 42 U.S.C. § 1983 Conspiracy (Council Meeting, Stop-Work Order, and Military-Channel Variants)

### (Against Glavan, Gilich, Creel, De Back, and Whitehead; by Petrini and Fusco)

394. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

395. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 to redress conspiracy, under color of state law, to deprive Plaintiffs of rights secured by the Constitution of the United States.

396. Agreement — Council Meeting. The seamless sequence at the March 3, 2026 meeting — Glavan's verbal command, Gilich's "Take them out," De Back's immediate physical execution — supports an inference of on-the-spot agreement.

397. Agreement — Stop-Work Order. Defendant Creel testified under oath that he "presented the information to the mayor and Pete Abide, who directed me to issue a stop work order". The order issued 24 days after Petrini filed Case No. 1:25-cv-00178 and was served with police assistance.

398. Agreement — Military Reconnaissance. Defendant Creel transmitted the November 2024 Moseley email at Defendant Gilich's express direction.

399. Agreement — Military Retaliation. The City of Biloxi's March 10, 2026 contact with Keesler Air Force Base occurred at Defendant Gilich's direction and with Defendant Gilich's knowledge and approval. Defendant Glavan's admission to Ward 4 Councilmember Jamie Creel at Tailgators that Glavan paid an individual to deliver harassing materials to Keesler, together with Colonel Robinson's memorandum, confirms the conspiracy between Defendants Gilich and Glavan to retaliate against Plaintiff Fusco through military channels.

400. Overt acts and constitutional deprivation. As pleaded in Counts I through X above.

401. Damages. Compensatory, nominal, punitive (individual-capacity Defendants only); declaratory and injunctive relief; attorney's fees under 42 U.S.C. § 1988.

402. Shield-defeating. Each individual Defendant acted under color of state law; each Defendant's conduct violated clearly established rights.

## U. Count XXI — Monell Municipal Liability

**(Against the City of Biloxi; with a sub-claim against Harrison County; by Petrini and Fusco)**

403. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

404. Statutory vehicle. This Count is brought against the City of Biloxi and Harrison County, Mississippi, as municipal corporations under 42 U.S.C. § 1983 pursuant to the Monell municipal-liability framework.

405. Constitutional violation predicate. The deprivations pleaded in Counts I through XX are incorporated.

406. Three independent grounds against the City of Biloxi — each standing alone establishes Monell liability.

407. Ground 1 — final-policymaker single decisions. Each of the following decisions by an official with final policymaking authority is independently sufficient: **(a)** the Council's March

49

3, 2026 suspension of its Rules of Order; **(b)** Defendant De Back's creation and distribution of the March 31, 2026 CIU Bulletin under his authority as Chief of Police and final policymaker for law-enforcement operations; and **(c)** Defendant Mayor Gilich's direction of the stop-work order, the military-channel reconnaissance, the Keesler contact, and the chamber-removal command.

408. Ground 2 — formal written policy. Biloxi City Council Resolution No. 635-19 routes all Municipal Court judicial-officer compensation through the City's Director of the Legal Department, whose approval is required. At all relevant times that Director was a named individual-capacity defendant in three pending federal civil-rights actions by Petrini. The compensation-capture regime is itself a formal written policy giving rise to municipal liability.

409. Ground 3 — widespread custom and pattern. The pattern documented in the Statement of Facts above — including the June 30, 2025 stop-work order, the November 7, 2025 Whitehead surveillance, the March 31, 2026 CIU Bulletin, the military-retaliation channel against Plaintiff Fusco, the April 28, 2026 coordinated charging-affidavit-and-Council-Meeting day, the April 29, 2026 Lusk-signed warrant, and the selective-disclosure scheme — constitutes a widespread custom of municipal retaliation against citizen critics.

410. Harrison County sub-claim — each policy independently sufficient. Each of the following official policies or customs of Harrison County independently constitutes Monell action against Harrison County: **(a)** the suspicionless ionizing-radiation X-ray of self-surrendered misdemeanants without consent or medical-staff explanation; **(b)** the visual body-cavity strip search of detainees after a pat-down has already disclosed no contraband; **(c)** the exact-change-only cash-receipt policy that delays release after bond tender; **(d)** the denial of medication to a detainee whose disability has been disclosed; **(e)** the denial of telephone access; and **(f)** the duplicative booking of each detainee on more than one occasion during a single custody period.

411. Damages. Compensatory, nominal; declaratory and injunctive relief; attorney's fees under 42 U.S.C. § 1988.

412. Shield-defeating. Municipal entities have no qualified immunity.

50

## V. Count XXII — Title II of the Americans with Disabilities Act: Failure to Accommodate at Arrest

**(Against the City of Biloxi; by Petrini)**

413. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

414. Qualified individual with a disability. Plaintiff Petrini is a qualified individual with a disability within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.

415. Public entity service. Arrest and booking by the Biloxi Police Department is a service of the City of Biloxi within the meaning of 42 U.S.C. § 12132.

416. Disability disclosed. Petrini informed Defendant Officer Johnson before and during the arrest of his pre-existing shoulder injuries and of his status as a qualified individual with a disability under the ADA.

417. Failure to accommodate. Despite the disclosure, Officer Johnson placed Petrini in handcuffs on at least four separate occasions, restrained Petrini's hands behind his back, and placed restraints around Petrini's feet.

418. By reason of disability. The repeated, exacerbating handcuffing constituted a failure to provide reasonable accommodation by reason of Petrini's disability.

419. Damages. Compensatory and nominal damages; declaratory and injunctive relief; attorney's fees under 42 U.S.C. § 1988 and 42 U.S.C. § 12205.

420. Shield-defeating. Title II abrogates sovereign immunity for conduct violating Fourteenth Amendment rights.

## W. Count XXIII — Title II of the Americans with Disabilities Act: Medication Denial in Custody

**(Against Harrison County; by Petrini)**

421. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

422. Qualified individual with a disability. As pleaded above.

51

423. Public entity service. Pretrial detention at the Harrison County Adult Detention Center is a service of Harrison County within the meaning of 42 U.S.C. § 12132.

424. Disability disclosed at booking and in custody. Petrini disclosed his ADA-qualified status to booking personnel at the Biloxi Police Department prior to transport to the Harrison County Adult Detention Center, and to Harrison County personnel on multiple occasions during the custody period.

425. Medication request denied. After the disclosures described in the preceding paragraph, Petrini requested medication required to manage the disability identified in the Statement of Facts above and 157. Harrison County personnel denied the medication request.

426. Denial of meaningful access. Without the requested medication, Petrini could not safely access the basic conditions of confinement.

427. Damages. Compensatory and nominal damages; declaratory and injunctive relief; attorney's fees under 42 U.S.C. § 1988 and 42 U.S.C. § 12205.

428. Shield-defeating. Title II abrogates sovereign immunity for Fourteenth Amendment violations; county entities have no qualified immunity.

## X. Count XXIV — Fourth and Fourteenth Amendment: Unreasonable Search of the Body (X-Ray and Strip Search)

### (Against Harrison County; by Petrini and Fusco)

429. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

430. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 on three independent constitutional grounds as set forth in the paragraphs that follow.

431. Three independent constitutional grounds — each standing alone supports liability: (a) Fourth Amendment unreasonable search of the body; (b) Fourteenth Amendment substantive due process violation of bodily integrity; and (c) Fourteenth Amendment procedural due process violation for suspicionless ionizing-radiation imaging imposed without informed consent.

432. Searches of the body. X-ray imaging — which exposes the imaged person to ionizing radiation and produces a permanent record of the internal architecture of the body — and visual body-cavity strip search are each searches of the body within the meaning of the Fourth Amendment under the bodily-intrusion framework.

433. No warrant, no probable cause, no exigency. Plaintiffs voluntarily surrendered themselves on misdemeanor charges carrying a $500 statutory maximum monetary penalty; no warrant authorized any bodily intrusion; no individualized suspicion of contraband existed; and no exigent circumstances justified either search.

434. Pat-down forecloses contraband justification. The pat-down searches conducted at the Biloxi Police Department prior to transport disclosed no weapons or contraband; no factual predicate existed for any subsequent more-intrusive bodily search.

435. Never admitted to general population. Plaintiffs were held only in booking, processing, and pre-release areas pending bond; both Plaintiffs were released on bond after approximately nine hours of detention without ever being admitted to the general population — placing each search outside any suspicionless-intake framework limited to general-population-admission contexts.

436. Reasonableness factors all fail. Each of the searches fails every reasonableness factor (scope, manner, justification, and place) under the controlling bodily-search reasonableness framework: the X-ray imposed medical-grade radiation absent medical necessity; the strip search subjected unclothed individuals to visual body-cavity inspection; neither was justified by individualized suspicion; and both were conducted on detainees not admitted to general population.

437. Bodily-integrity and informed-consent violations. The Fourteenth Amendment substantive-due-process bodily-integrity framework prohibits state actors from imposing unwanted ionizing-radiation imaging on a non-violent self-surrendered misdemeanant absent compelling justification — none of which Harrison County can supply. No informed consent, no notice, no opportunity to refuse, and no medical-staff explanation preceded the X-ray imposed on

each Plaintiff.

438. Damages. Compensatory damages; nominal damages; punitive damages against each individual-capacity Defendant identified through discovery; declaratory and permanent injunctive relief enjoining Harrison County's policies of suspicionless ionizing-radiation X-ray and visual body-cavity search of self-surrendered misdemeanants who are not admitted to the general population; expungement of any X-ray imagery or related body-imaging records retained by Harrison County concerning Plaintiffs; attorney's fees under 42 U.S.C. § 1988.

439. Shield-defeating. Harrison County has no qualified immunity. The rights to be free of suspicionless bodily searches absent general-population admission, of unwanted ionizing-radiation exposure, and of bodily integrity in pretrial detention were clearly established.

## Y. Count XXV — Defamation (Mississippi Law — Reserved for Private Actors)

**(Against Chastain, Cavanaugh, Samuel Poulos, and Joanne Poulos; by Petrini and Fusco)**

440. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

441. False defamatory statements. The Operation Icebreaker page published statements asserting that Petrini is unlawfully present in the United States and that Petrini is in the United States on an H-1B visa; Petrini is in fact a Lawful Permanent Resident. The page asserted the existence of active arrest warrants for Plaintiffs prior to any public docket disclosure. The "BUSTED" paid advertisement contained content of a racial character. Defendant Joanne Poulos has accused Plaintiffs of falsifying facts published on Plaintiffs' journalism platforms.

442. Unprivileged publication. Each statement was published on Facebook to third parties.

443. Fault. The false statements were made with actual knowledge of their falsity or with reckless disregard for truth, given the operators' real-time contact with the affiant and the prosecuting office.

444. Defamation per se. The statements impute criminality (unlawful presence; active warrants) and falsity in Plaintiffs' professional capacity as journalists, and are actionable per se under Mississippi law without proof of special damages.

445. Damages. Compensatory damages, punitive damages, and reputational restitution.

446. Alternative federal pleading. To the extent any Defendant in this count is found to be a state actor through willful joint participation with state actors as described above, this count is alternatively pleaded under 42 U.S.C. § 1983 as a stigma-plus claim.

## Z. Count XXVI — Defamation Per Se: Fabricated Booking Image (Mississippi Law)

### (Against Samuel Poulos; by Fusco)

447. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

448. False defamatory image. On or about April 23, 2026, Defendant Samuel Poulos published on his personal Facebook page a fabricated image purporting to depict the booking of Plaintiff Fusco. The April 23, 2026 image was false on its face because Plaintiff Fusco had not been arrested or booked at any time on or before that date.

449. Public identification of the subject. In conjunction with the fabricated images, Defendant Samuel Poulos publicly identified Plaintiff Fusco by name and by reference to Fusco's authorship and publication of the journalism platform Biloxi Politics Uncensored.

450. Publication to third parties. Defendant Samuel Poulos disseminated the fabricated image to the followers of his personal Facebook page.

451. Fault. Defendant Samuel Poulos knew that the April 23, 2026 image was fabricated because no booking of Plaintiff Fusco had occurred on or before that date. Defendant Samuel Poulos acted with actual malice or reckless disregard for the truth.

452. Defamation per se. The fabricated booking image imputes the commission of a crime resulting in arrest and booking, and is actionable per se under Mississippi law without proof of special damages. The image further injures Plaintiff Fusco in his profession and capacity as the publisher of the journalism platform Biloxi Politics Uncensored.

453. Damages. Compensatory damages; punitive damages; reputational restitution; injunctive relief ordering Defendant Samuel Poulos to remove and refrain from republishing the fabricated image.

---

## AA. Count XXVII — First Amendment Retaliation and Unconstitutional Conditions: Manufactured Permit-Denial and Forced Zoning Proceeding

### (Against Creel, Whitehead, Gilich, and the City of Biloxi; by Petrini)

454. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

455. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the First Amendment and the Fourteenth Amendment.

456. Protected activity. Plaintiff Petrini's protected activity includes the filing and prosecution of three federal civil-rights actions against the City of Biloxi and the ongoing publication of investigative journalism on Plaintiff Petrini's platform peoplevsbiloxi.com.

457. Adverse-action triad. The City of Biloxi, acting through Defendant Creel and Defendant Whitehead, engaged in the following adverse actions: (a) denied the three-phase electrical-permit application on January 23, 2026 on a manufacturing-classification basis the existing RB zoning did not require; (b) mischaracterized the resulting appeal as concerning "Specific Use of the Property" — re-routing the matter through a Zoning Board proceeding Plaintiff Petrini never requested; and (c) required Plaintiff Petrini to file two paid "Zoning Map change" applications totaling $350 that had no basis in Plaintiff Petrini's underlying application or the existing zoning.

458. Chilling effect. Each adverse action described in the preceding paragraph would deter a person of ordinary firmness from continuing to engage in First Amendment activity, including the continued prosecution of federal civil-rights claims and the continued publication of journalism critical of the City.

56

459. Causation. Causation is established by **(i)** temporal proximity between the January 23, 2026 denial and Plaintiff Petrini's pending federal civil-rights actions and ongoing journalism; **(ii)** the absence of any legitimate non-retaliatory basis, because the existing RB zoning permitted three-phase electrical service and Plaintiff Petrini's property holds a City-issued Contractor Headquarters license; and **(iii)** the City's manufactured re-routing of the appeal through a zoning-classification channel Plaintiff Petrini never triggered.

460. Unconstitutional condition. The City of Biloxi's April 8, 2026 settlement proposal conditioned the City's resolution of the three-phase electrical-permit denial — a routine governmental service to which Plaintiff Petrini was entitled — upon Plaintiff Petrini's release of pending and future civil-rights claims against the City and its officials and upon Plaintiff Petrini's waiver of all claims relating to the historic-district designation applicable to the property. The unconstitutional-conditions doctrine prohibits state actors from conditioning a benefit, service, or privilege on a citizen's waiver of constitutional rights.

461. Damages. Compensatory damages — including out-of-pocket costs of $175 in advertising fees and $350 in mandated Zoning Map change application fees; nominal damages; punitive damages against each individual-capacity Defendant; declaratory and injunctive relief vacating Case No. 26-017-BZA, vacating the January 23, 2026 denial, and ordering issuance of the three-phase electrical permit; and attorney's fees under 42 U.S.C. § 1988.

462. Shield-defeating. The right to be free of retaliatory permit-denial for First Amendment activity, and the right to be free of governmental conditioning of services on waiver of constitutional rights, were each clearly established at the time of the conduct alleged. Defendant Whitehead, a private attorney, performed work the City of Biloxi would otherwise have performed itself; he therefore acted under color of state law for purposes of 42 U.S.C. § 1983 under the public-function framework.

57

**BB. Count XXVIII — Procedural Due Process: Manufactured Manufacturing Classification Without Required Procedure**

**(Against Creel and the City of Biloxi; by Petrini)**

463. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

464. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Fourteenth Amendment's Due Process Clause.

465. Protected interests. Plaintiff Petrini holds protected property and liberty interests in: **(a)** the use of the property at 287 Bohn Street / 929 Division Street within the existing RB zoning classification; **(b)** the City-issued Contractor Headquarters business license attached to that property; and **(c)** the right to receive routine municipal services, including electrical permitting, on the same terms applied to similarly situated property owners.

466. Deprivation. The City of Biloxi deprived Plaintiff Petrini of those interests by denying the three-phase electrical-permit application, asserting a "manufacturing" classification through correspondence only, demanding $350 in fees for two Zoning Map change applications Plaintiff Petrini had not requested, and initiating Case No. 26-017-BZA before the Biloxi Zoning Board of Adjustments and Appeals.

467. Sua sponte origin, no proper vehicle, no factual basis. Plaintiff Petrini never applied for any change in zoning, use, or classification of the property; the City initiated the manufacturing-classification proceeding on its own motion. The asserted factual basis for the classification originated in the City's surveillance of the property conducted during a statutory stay, without lawful predicate. An electrical-permit application is not a vehicle for adjudicating zoning use; the City nevertheless used Plaintiff Petrini's electrical-permit application as an occasion to assert a classification the application did not invoke. Each of these facts is documented in the City's own correspondence and is not subject to good-faith denial.

58

468. Procedural defects. The City asserted the manufacturing classification by correspondence only, without issuing the formal written determination, notice of violation, written notice of decision within the time prescribed, or other procedural protections that the applicable municipal ordinance and constitutional due process require; and routed Plaintiff Petrini's appeal to a body whose composition Plaintiff Petrini has separately challenged as unlawfully constituted.

469. Burden-flip. Once an application for an electrical-panel substitution was submitted within the existing RB classification, the burden of articulating a specific failed standard rested on the City, not on Plaintiff Petrini. The City instead imposed an indefinite request-for-information loop and asserted a classification through correspondence, transferring the burden in violation of constitutional due process.

470. Pre-deprivation hearing required. The private interest in the existing zoning classification, business license, and routine municipal service is substantial; the risk of erroneous deprivation through correspondence-only classification is high; and the governmental interest in correct procedure is met by providing the procedures the applicable municipal ordinance already requires. A pre-deprivation hearing before a lawfully constituted body was constitutionally required and was not provided.

471. Damages. Compensatory damages — including out-of-pocket costs of $175 in advertising fees and $350 in mandated Zoning Map change application fees, **and damages for interference with Plaintiff Petrini's business operations at the property, including lost business attributable to the inability to perform contractor activities requiring three-phase electrical service, in an amount to be determined at trial**; nominal damages; punitive damages against Defendant Creel; declaratory relief that the manufacturing classification was asserted without the procedures the Due Process Clause requires; injunctive relief vacating the January 23, 2026 denial, vacating Case No. 26-017-BZA, and ordering issuance of the three-phase electrical permit; and attorney's fees under 42 U.S.C. § 1988.

472. Shield-defeating. The right to procedural due process before a municipal classification deprives a property owner of a routine governmental service was clearly established. The procedures at issue were within Defendant Creel's authority and competence to provide.

### CC. Count XXIX — Sixth and Fourteenth Amendments: Denial of Access to Counsel by Telephone Obstruction During Pretrial Custody

**(Against Harrison County and the City of Biloxi; by Petrini and Fusco)**

473. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

474. Statutory vehicle. This Count is brought under 42 U.S.C. § 1983 on two independent grounds: **(a)** the Sixth Amendment right to counsel as incorporated against the States through the Fourteenth Amendment; and **(b)** the Fourteenth Amendment's Due Process Clause, which independently guarantees pretrial detainees meaningful access to counsel and to the courts.

475. Attachment of the Sixth Amendment right. The April 28, 2026 charging affidavit and the April 29, 2026 warrant signed by Defendant Lusk initiated formal adversarial proceedings against each Plaintiff. By the May 5, 2026 arrests, the Sixth Amendment right to counsel had attached.

476. Pretrial custody. Plaintiffs were held in custody at the Harrison County Adult Detention Center for approximately nine hours on May 5, 2026, pending posting of bond.

477. Critical-stage events during custody. During the custody period, decisions affecting each Plaintiff's liberty, bodily integrity, and rights were imposed without an opportunity to consult counsel: the $1,000 bond amount; the ionizing-radiation X-ray imposed without consent; the visual body-cavity strip search; the denial of medication to Petrini; and the May 5, 2026 gag order entered against Petrini in the same proceeding.

478. Telephone access denied. Plaintiff Fusco was not permitted to place any telephone call during the custody period. Plaintiff Petrini was not permitted to place a telephone call until approximately 9:00 p.m., and only after repeated requests.

479. Obstruction of counsel access. The denial of telephone access foreclosed each Plaintiff from contacting retained or appointed counsel during the custody period concerning the bond amount, the searches and procedures imposed, the medication denial, the gag order, and family-notification arrangements.

480. Independent Fourteenth Amendment ground. Independently of the Sixth Amendment, the Fourteenth Amendment Due Process Clause guarantees pretrial detainees meaningful access to counsel and to the courts. The blanket denial of telephone access during the May 5, 2026 custody period violated that right.

481. Damages. Compensatory damages — including anxiety, family-notification delay, and the practical inability to retain or consult counsel during custody; nominal damages; declaratory relief that meaningful telephone access to counsel during pretrial custody is constitutionally required; injunctive relief, including training and policy-reform orders requiring such access; costs, and attorney's fees under 42 U.S.C. § 1988 reserved should Plaintiffs retain counsel.

482. Shield-defeating. Harrison County and the City of Biloxi are municipal corporations not entitled to qualified immunity. The denial of meaningful access to counsel during pretrial detention violates rights clearly established under the Fourteenth Amendment Due Process Clause.

### DD. Count XXX — Mississippi Constitution Article 3 Violations (Supplemental Jurisdiction)

**(Against all individual-capacity Defendants and the City of Biloxi and Harrison County; by Petrini and Fusco)**

483. Plaintiffs reallege paragraphs 1 through 229 as if fully set forth herein.

484. Statutory vehicle. This Count is brought under the Constitution of the State of Mississippi, Article 3, and is before this Court pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367(a) over state-law claims that form part of the same case or controversy as the

federal claims pleaded herein.

485. Article 3, § 13 (freedom of speech and press). Each violation of Plaintiffs' federal First Amendment rights pleaded in Counts I through VI, XX, and XXVII of this Complaint independently violates Mississippi Constitution Article 3, § 13's parallel guarantee of free speech and free press.

486. Article 3, § 14 (due process). Each violation of Plaintiffs' federal Fourteenth Amendment due-process rights pleaded in Counts XI, XII, XIV, and XXVIII of this Complaint independently violates Mississippi Constitution Article 3, § 14's parallel guarantee of due process of law.

487. Article 3, § 23 (search and seizure). Each violation of Plaintiffs' federal Fourth Amendment rights pleaded in Counts VII through X and XXIV of this Complaint independently violates Mississippi Constitution Article 3, § 23's parallel guarantee against unreasonable searches and seizures.

488. Article 3, § 29 (excessive bail). The $1,000 bond imposed by Defendant Lusk on a charge carrying a statutory monetary penalty ceiling of $500 violates Mississippi Constitution Article 3, § 29's parallel prohibition on excessive bail.

489. Damages. Compensatory and nominal damages on each state-constitutional claim; declaratory and injunctive relief; reasonable attorney's fees and costs to the extent recoverable under Mississippi law.

490. Shield-defeating. The Mississippi Constitution Article 3 rights pleaded herein are coextensive with their federal counterparts and supportable in an action for damages and equitable relief.

## V. JURY DEMAND

491. Plaintiffs demand a trial by jury on all issues triable to a jury under Federal Rule of Civil Procedure 38(b).

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court **GRANT** the following relief:

(a) **Declaratory** judgment that Defendants violated Plaintiffs' rights under the **First, Fourth, Sixth, Eighth,** and **Fourteenth Amendments** to the Constitution of the United States;

(a-1) **Declaratory** judgment that Defendants violated Plaintiffs' rights under Article 3, §§ 13, 14, 23, and 29 of the Constitution of the State of Mississippi;

(b) **Declaratory** judgment that the April 29, 2026 warrant signed by Defendant Lusk in Cause No. 260301169, was issued in the **clear absence of all jurisdiction** and is **void ab initio**;

(c) **Declaratory** judgment that the May 5, 2026 gag order signed by Defendant Lusk in Cause No. 260301169, was issued in the **clear absence of all jurisdiction** and is **void ab initio**;

(d) **Declaratory** judgment that Defendant Harenski breached the October 1, 2025 settlement protections, in violation of Plaintiff Petrini's procedural due process rights;

(e) **Declaratory** judgment that the Biloxi Municipal Court bench is **structurally biased** by reason of the judicial-officer compensation regime established under Biloxi City Council Resolution No. 635-19, which subjects judicial-officer compensation to the approval of the Director of the Legal Department, a position held at all relevant times by Peter C. Abide, who is a named individual-capacity defendant in three other pending federal civil-rights actions brought by Plaintiff Petrini (Nos. 1:25-cv-00178, 1:25-cv-00233, and 1:25-cv-00254);

(f) **Permanent injunction** barring further prosecution of Plaintiffs under the affidavits and warrant identified above, including but not limited to Cause No. 260301169 in the Biloxi Municipal Court;

(g) **Permanent injunction** vacating the May 5, 2026 gag order signed by Defendant Lusk in Cause No. 260301169;

(h) **Permanent injunction** ordering the City of Biloxi and Harrison County to **destroy** all copies of the March 31, 2026 CIU Bulletin, and to **expunge** from all law-enforcement databases

63

(i) Plaintiff Petrini's Social Security number and other personal identifiers disseminated by the CIU Bulletin, and (ii) the May 5, 2026 booking records, booking photographs, and arrest-related identifiers of Plaintiffs Petrini and Fusco;

(h-1) **Permanent injunction** ordering the City of Biloxi to conduct a forensic audit of all internal records concerning Plaintiffs that were disclosed to the Operation Icebreaker / Biloxi Civility Watchdog Facebook page or its operators before public docket disclosure, and to implement procedural safeguards preventing future selective disclosure of investigative or charging records on the basis of requestor identity or First Amendment activity;

(i) **Permanent injunction** ordering Defendants McMahan, Thacker, and the City of Biloxi to perform their statutory duty under the Mississippi Public Records Act, Miss. Code Ann. §§ 25-61-1 et seq., including the seven-working-day response requirement of § 25-61-5(1)(a), to produce the records sought by Plaintiffs' public-records requests, free from interference, direction, or instruction by City counsel or any other party, and prospectively to respond to public-records requests without selective-disclosure discrimination among requestors;

(j) **Permanent injunction** barring Defendants and their agents from further contact with the United States Air Force, the Department of Defense, Keesler Air Force Base, or any military chain of command regarding Plaintiff Fusco's protected First Amendment activity;

(k) **Permanent injunction** barring Defendants and their agents from further use of any law-enforcement intelligence apparatus, criminal-investigation bulletin, military communication channel, judicial process, or municipal regulatory authority to retaliate against Plaintiffs for protected First Amendment activity;

(l) **Compensatory damages** in an amount to be determined at trial;

(m) **Nominal damages** for each proven constitutional violation;

(n) **Punitive damages** against each individual-capacity Defendant in an amount sufficient to deter future violations;

(o) **Restitution** of all out-of-pocket costs Plaintiffs incurred as a proximate result of the unlawful conduct alleged herein — including bond, fees, fines, medical, process, and

64

lost-business costs — in amounts to be proven at trial;

(o-1) Such referrals to the **Mississippi Bar Office of Disciplinary Counsel** for investigation of the professional conduct of any attorney Defendants and their counsel of record as this Court may deem appropriate in light of the conduct alleged herein;

(p) **Costs,** and **attorney's fees** under 42 U.S.C. § 1988 and 42 U.S.C. § 12205 for any period during which Plaintiffs are represented by counsel, the right to such fees being expressly reserved should Plaintiffs retain counsel at any stage of this action;

(q) **Such other and further relief,** whether at law or in equity, as this Court may deem just and proper.

Respectfully submitted this _11_ day of __May__, 2026.

/s/ Yuri Petrini
YURI PETRINI
Plaintiff, Pro Se
929 Division Street
Biloxi, MS 39530
Telephone: (305) 504-1323
Email: contact@peoplevsbiloxi.com
Email: yvpetrin@my.loyno.edu

/s/ Jarrod Lewis Fusco
JARROD LEWIS FUSCO
Plaintiff, Pro Se
435 Cove Drive
Biloxi, MS 39531
Telephone: (702) 375-8926
Email: publicaffairs@biloxipolitics.com

---

## CERTIFICATE OF SERVICE
### (Pursuant to L.U.Civ.R. 4.1, 4.2, 5.1, and Fed. R. Civ. P. 4 and 5)

I hereby certify that on the _11_ day of __May__, 2026, I filed the foregoing with the Clerk of Court, and that service upon all Defendants who have previously appeared in this action will be accomplished through the CM/ECF system pursuant to L.U.Civ.R. 5.1 and Fed. R. Civ. P. 5(b)(2)(E). As to any Defendants who have not yet appeared, Plaintiffs will effect service of process pursuant to Fed. R. Civ. P. 4 within ninety (90) days as required by Fed. R. Civ. P. 4(m), and will file with the Court returns of service in accordance with L.U.Civ.R. 4.2 and Fed. R. Civ. P. 4(l).

/s/ Yuri Petrini
YURI PETRINI
Plaintiff, Pro Se

/s/ Jarrod Lewis Fusco
JARROD LEWIS FUSCO
Plaintiff, Pro Se