

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JUN 05 2026
ARTHUR JOHNSTON
BY_____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

## SOUTHERN DIVISION

YURI PETRINI and
JARROD LEWIS FUSCO,
    **Plaintiffs,**
v.
KENNY GLAVAN, ET AL.,
    **Defendants.**

Civil Action No. 1:26-cv-00094-LG-RPM

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT APRYL READY'S MOTION TO DISMISS [ECF 63] AND MEMORANDUM IN SUPPORT [ECF 64]

---

### I. INTRODUCTION

A motion can ask too little and fail; this one asks too much, and fails for that reason. Defendant Apryl Lee Ready, joined by her counsel, asks this Court to do two extraordinary things at the threshold — to **dismiss** every claim against her *with prejudice*, and to **sanction** the pro se Plaintiffs for bringing them — on a single defense, absolute judicial immunity, that **asks too much, proves too much, and answers nothing.** It asks too much, because immunity must appear on the face of the complaint, and the face of this one does not even establish that Defendant is a judge. It proves too much, because if the defense were as broad as the Motion needs it to be, no judicial conduct could ever be reached — and *Forrester v. White, Pulliam v. Allen*, and the structural-bias line hold otherwise. And it answers nothing, because the one document that would end the inquiry — a lawful appointment seating Ready, or Scott Lusk, as a judge of the City of Biloxi — appears nowhere in the Motion, the Brief, or the record.

Defendant and her counsel are both members of the Bar; Defendant is held out as a Municipal Court Judge of the City of Biloxi, and her counsel serves as Board Attorney for Harrison County. These are offices that carry the authority — and the responsibility — of the State. They also carry a burden the Motion cannot meet: one who claims the State's immunity

must first show the State's commission, and Defendant shows none.[1]

The Amended Complaint pleads that the Biloxi municipal bench was stripped of neutrality by a single compensation-and-approval pipeline controlled by one official who is himself a Defendant — a structural-due-process injury the Fifth Circuit has twice sustained. *Caliste v. Cantrell*, 937 F.3d 525 (5th Cir. 2019); *Cain v. White*, 937 F.3d 446 (5th Cir. 2019). The Motion does not dispel that theory; it **illustrates** it. Its own logic — that a recused judge who designated no successor is nonetheless immune, while the warrant issued from an out-of-municipality judge with no produced appointment — describes a court that no longer seats its judges by law, but by arrangement.

And the arrangement is over-built. Biloxi has, by the latest federal decennial census, **49,449 residents.** On that number the statute is not ambiguous — it is arithmetic. Miss. Code Ann. § 21-23-3 authorizes a municipality of Biloxi's size **two** municipal judges — "a municipal judge" and "one (1) additional" — and reserves any larger bench to a city "in excess of fifty thousand (50,000) according to the latest federal decennial census." A § 21-23-9 judge *pro tempore* is a substitute, not a third seat. Yet the City's own resolutions — Exhibit A (Simpson, Res. 432-25), Exhibit B (Steele, Res. 469-25), and Exhibit C (Ready, Res. 470-25) — appoint **three** standing § 21-23-3 "Municipal Court Judges." Three where the law allows two. And Defendant is the third: the City's own court website lists only Simpson and Steele, while Defendant alone is paid not by salary but by the hour, on invoices "subject to approval by the Director of the Legal Department" — the very official the Complaint alleges controls the pipeline. The statute does permit a third judicial officer — but only a § 21-23-9 judge *pro tempore*: a substitute who may sit only when a regular judge "is absent or unable to serve," and whom the City compensates at **$300 per session** (Res. 507-14). Defendant is no *pro tempore*. She was appointed as a **standing** § 21-23-3 "Municipal Court Judge," not designated a substitute; she

---

[1] Plaintiffs have separately moved to disqualify Defendant's counsel and to refer him to the Mississippi Bar, for simultaneously representing Harrison County, the City Attorney's firm, the City's defense counsel, and Hon. Ready — a web of mutually adverse, government-side representations. *See* Pls.' Mot. to Disqualify Tim C. Holleman.

sits though neither Simpson nor Steele is absent; and she is paid not $300 per session but **$140 per hour**, on invoices a named Defendant approves. She fits no lawful seat — the two standing seats are filled, and the only remaining seat, the *pro tempore*'s, matches neither her appointment, nor her occasion for sitting, nor her pay.

The defect is on the face of Defendant's own commission. Resolution 470-25 — the instrument that purports to seat Apryl Ready — confirms, in its operative paragraph, the appointment of **"James C. Steele,"** a fragment left behind from the resolution it was copied from. The document meant to make Ready a judge names someone else.

The conclusion follows without strain. One who exercises judicial power without a lawful appointment is not a judge but a usurper, "to whose acts no validity can be attached." *Norton v. Shelby County*, 118 U.S. 425, 449 (1886). Unless the Court simply assumes what the Motion must prove — that Ready is a lawfully seated judge at all — the immunity defense never reaches the starting line. On the judicially-noticeable record it cannot be assumed; on the face of the Amended Complaint it is not established; and on the City's own documents it is affirmatively contradicted. The Motion fails for the reasons that follow, each independent. The Court need not reach them all to deny it. Defendants would have the Court mistake motion for merit; the record, fairly read, does not permit it.

## II. TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT**

*Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
*Bd. of Regents v. Roth*, 408 U.S. 564 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
*Dennis v. Sparks*, 449 U.S. 24 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*Ex parte Virginia*, 100 U.S. 339 (1880) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Foman v. Davis*, 371 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Forrester v. White*, 484 U.S. 219 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
*Gibson v. Berryhill*, 411 U.S. 564 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Haines v. Kerner*, 404 U.S. 519 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
*Mireles v. Waco*, 502 U.S. 9 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
*Norton v. Shelby County*, 118 U.S. 425 (1886) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
*Owen v. City of Independence*, 445 U.S. 622 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
*Perry v. Sindermann*, 408 U.S. 593 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*Pierson v. Ray*, 386 U.S. 547 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Pulliam v. Allen*, 466 U.S. 522 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
*Ryder v. United States*, 515 U.S. 177 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
*Stump v. Sparkman*, 435 U.S. 349 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Sup. Ct. of Va. v. Consumers Union*, 446 U.S. 719 (1980) . . . . . . . . . . . . . . . . . . . . . . . . 6
*Tumey v. Ohio*, 273 U.S. 510 (1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*United States v. Will*, 449 U.S. 200 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*Ward v. Village of Monroeville*, 409 U.S. 57 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**
*Boyd v. Biggers*, 31 F.3d 279 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Cain v. White*, 937 F.3d 446 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
*Caliste v. Cantrell*, 937 F.3d 525 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
*Covington v. Aban Offshore Ltd.*, 650 F.3d 556 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . 13
*Davis v. Tarrant County*, 565 F.3d 214 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
*Hilliard v. Ferguson*, 30 F.3d 649 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*Holloway v. Walker*, 765 F.2d 517 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Malina v. Gonzales*, 994 F.2d 1121 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATE COURTS**
*Crowley v. Germany*, 268 So. 3d 1277 (Miss. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
*N.C. State Conf. of NAACP v. Moore*, 876 S.E.2d 513 (N.C. 2022) . . . . . . . . . . . . . . . . . . 7

**STATUTES**
42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
42 U.S.C. § 1985 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
42 U.S.C. § 1988(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Miss. Code Ann. § 1-3-33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Miss. Code Ann. § 11-55-1 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Miss. Code Ann. § 21-23-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Miss. Code Ann. § 21-23-9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**RULES**
Fed. R. Civ. P. 11(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Civ. P. 12(b)(6) ........................................................ 11
Fed. R. Civ. P. 12(d) ........................................................... 13
Fed. R. Civ. P. 15(a)(2) ........................................................ 15
Fed. R. Evid. 201 ............................................................... 7

## III. RELEVANT BACKGROUND (ACCEPTED AS TRUE)

On October 1, 2025, City Prosecutor Harenski transmitted to Petrini a written settlement letter — given in exchange for Petrini's dismissal of Harenski from a prior action — assuring that before any future criminal process the City would provide (a) notice and a chance to cure; (b) City-Prosecutor review and approval of any affidavit; and (c) probable-cause review by "Judge Ready (or, in her absence, another Municipal Court Judge)." Am. Compl. ¶¶ 3–8, 318. The three regular Biloxi Municipal Court judges — Ready, Simpson, and Steele — are compensated and approved through a single Abide-controlled pipeline, rendering the bench financially dependent at one-hundred percent on a named Defendant. *Id.* ¶¶ 321, 330. On April 28–29, 2026, each assurance was breached; the warrant was signed not by any Biloxi judge but by Lusk, the D'Iberville Municipal Judge. *Id.* ¶ 320. The matter reached Lusk because **all three** Biloxi judges had recused — including Simpson and Steele, against whom the Amended Complaint pleads **no** prior controversy, litigation, or professional contact. *Id.* ¶¶ 99, 119, 491. On April 29, 2026, Petrini transmitted a written Notice and Demand by electronic mail to Judge Ready and others through the Clerk of the Biloxi Municipal Court. *Id.* ¶¶ 94, 388.

## IV. LEGAL STANDARD

The Court accepts all well-pleaded allegations as true and views them in the light most favorable to Plaintiffs. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Pro se pleadings are construed liberally. *Haines*, 404 U.S. at 520. Review is confined to the complaint's four corners; matters outside the pleadings are disregarded or convert the motion to summary judgment. Fed. R. Civ. P. 12(d). Judicial immunity is an affirmative defense that warrants dismissal only where established on the face of the complaint.

## V. ARGUMENT

### A. Judicial Immunity Is a Damages Doctrine That Does Not Reach the Declaratory Structural Claim or the City of Biloxi.

Absolute judicial immunity shields a judge from **damages** for judicial acts; it "is not a bar to prospective injunctive relief against a judicial officer." *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984); accord *Sup. Ct. of Va. v. Consumers Union*, 446 U.S. 719, 736–37 (1980). The 1996 amendment to § 1983 left that intact: it bars only injunctive relief against a judicial officer for acts in a judicial capacity, and "even then only 'unless a declaratory decree was violated or declaratory relief was unavailable.'" 42 U.S.C. § 1983. The Amended Complaint seeks **declaratory** relief on the structural-capture count; immunity does not foreclose it. Nor is that claim moot — the captured bench is the standing tribunal that, by the City's own assurance, governs "any future criminal charges" against Petrini (Am. Compl. ¶ 4), so the controversy is live and capable of repetition.

Immunity is, in any event, **wholly inapplicable to the City of Biloxi**, a named Defendant on the structural counts. A municipality enjoys no judicial — or good-faith — immunity under § 1983. *Monell*, 436 U.S. at 690–94; *Owen*, 445 U.S. at 638, 650. The Amended Complaint pleads the Abide-controlled regime as the City's own structural arrangement (¶¶ 321, 330), and pleads that the City **ratified** that arrangement as official policy: on May 26, 2026, the City Council — with documented notice of its conflict — confirmed a Special Municipal Prosecutor to pursue Petrini *en bloc*, without deliberation or recusal (¶ 332). A final policymaker's deliberate ratification is itself municipal policy under *Monell*. Immunity cannot touch that municipal-policy claim, which independently defeats dismissal of the structural claim.

6

**B. The Motion Does Not Establish, on the Face of the Complaint, That Defendant Holds a Lawful Judicial Office Entitled to Absolute Immunity.**

Absolute judicial immunity is an affirmative defense available only to one who holds the judicial office it protects, and it supports a Rule 12(b)(6) dismissal only where the entitlement is established **on the face of the complaint**. That premise — that Defendant is a lawfully constituted judicial officer — is neither pleaded by Plaintiffs nor apparent on the face; and judicially-noticeable law places it in question.

The Court may take judicial notice of Mississippi law, of the United States Census, and of the City's own public records. Fed. R. Evid. 201. Mississippi authorizes a municipality of Biloxi's size only **two** municipal judges: Miss. Code Ann. § 21-23-3 provides for "a municipal judge" and **"one (1) additional** municipal judge," and reserves any larger bench ("not more than ten (10)") to a municipality "having a population **in excess of fifty thousand (50,000) according to the latest federal decennial census**." Biloxi's 2020 decennial population is **49,449** — below that threshold. On the noticeable record, whether Defendant occupies a lawful § 21-23-3 seat is, at the least, **unresolved** — and a dismissal on immunity requires the opposite: that her entitlement be clear on the face.

A person who exercises judicial power without a valid appointment is a usurper, not a judge: "[w]here no office legally exists, the pretended officer is merely a usurper, to whose acts no validity can be attached." *Norton v. Shelby County*, 118 U.S. 425, 449 (1886); see also *N.C. State Conf. of NAACP v. Moore*, 876 S.E.2d 513 (N.C. 2022); *cf. Ryder v. United States*, 515 U.S. 177, 182–83 (1995). That defect is not the curable kind: § 21-23-3 creates not an open-ended judgeship that any number may occupy, but a fixed, population-keyed count of seats — two, for a city of Biloxi's size — so a seat beyond that count is not an existing office defectively filled, but one the Legislature never created, and "[t]here can be no officer, either de jure or de facto, if there be no office to fill." *Norton*, 118 U.S. at 441; *see* Miss. Code Ann. § 1-3-33 (singular includes the plural only absent a contrary legislative intent); Part E (reading the seats as an uncapped pool

would nullify § 21-23-3's express population tiers). The de facto doctrine, which validates the acts of one defectively appointed to a **real** office, has nothing to operate upon where the seat itself was never created. Absolute judicial immunity does not attach to one who holds no lawful judicial office. Because that status is unestablished on the face and placed in question by judicially-noticeable law, the affirmative defense cannot be resolved in Defendant's favor at the pleading stage; at most it presents a question requiring conversion under Rule 12(d) and discovery (Part F).

This ground is pleaded **in the alternative**. Even if Defendant is treated as a de facto judicial officer entitled to immunity for adjudicative acts, the conduct pleaded against her is administrative (Part C) and the structural-capture claim is immunity-proof (Part A); the Motion fails on each independent ground.

### C. Immunity Is Analyzed Act-by-Act; the Conduct Pleaded Against Judge Ready Is Administrative, Not Judicial.

"[I]mmunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches"; what controls is "the nature of the function performed, not the identity of the actor." *Forrester v. White*, 484 U.S. 219, 227, 229 (1988); accord *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–36 (1993); *Mireles v. Waco*, 502 U.S. 9, 12–13 (1991). The Fifth Circuit isolates the precise act and asks whether it is a normal judicial function, occurred in the courtroom or chambers, centered on a case then pending, and arose from a litigant's visit in the judge's official capacity. *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993); *Davis v. Tarrant County*, 565 F.3d 214, 221–22 (5th Cir. 2009).

The conduct pleaded against Judge Ready — the failure to designate a non-captured successor after recusal (Am. Compl. ¶¶ 325, 336) — fails every factor. Deciding **who will sit** is made off the docket, in no pending case, on no litigant's visit. It is the administrative **selection of personnel**, which the Supreme Court has treated as non-judicial for nearly 150 years: a judge's duty of **selecting jurors** "is merely a ministerial act," one that "might as well have been

committed to a private person as to one holding the office of a judge." *Ex parte Virginia*, 100 U.S. 339, 348 (1880), quoted approvingly in *Forrester*, 484 U.S. at 229. *Forrester* itself denied immunity for a judge's personnel decisions because they did not "assist the judge in interpreting the law or exercising judicial discretion in the resolution of disputes." 484 U.S. at 229. *Davis* does not aid Defendant: it found a **per-case** attorney-appointment process immune because it could not "be divided in a principled way into judicial and administrative acts" and was entangled with deciding **who represents a defendant in pending cases**, 565 F.3d at 226 — the opposite of an off-docket, structural choice of **which judge** will sit.

Defendant's own framing concedes the point. She insists Judge Ready "recused" and took "no action" (Br. n. 9), while claiming immunity for "quintessential judicial functions" (Br. 4). Both cannot be true: if she recused and rendered no adjudicative decision, there is no judicial act to immunize, and only the administrative omission remains. Whether the function is "judicial" turns on its nature, not Defendant's label, *Stump v. Sparkman*, 435 U.S. 349, 362 (1978), and cannot be resolved against Plaintiffs at the pleading stage. Plaintiffs do not argue that malice defeats immunity, *Pierson v. Ray*, 386 U.S. 547 (1967); they argue the **function** was not judicial — on which Defendant's authorities (*Boyd v. Biggers*, 31 F.3d 279 (5th Cir. 1994); *Holloway v. Walker*, 765 F.2d 517 (5th Cir. 1985)) are silent.

### D. The Structural-Financial-Capture Claim States a Due-Process Violation; *United States v. Will* Does Not Foreclose It.

An impartial tribunal is the irreducible core of due process; no judge may sit where the structure of his compensation offers a "possible temptation ... not to hold the balance nice, clear and true." *Tumey v. Ohio*, 273 U.S. 510, 532 (1927). The disqualifying interest need not be personal — an institutional financial stake suffices, *Ward v. Village of Monroeville*, 409 U.S. 57, 60 (1972); *Gibson v. Berryhill*, 411 U.S. 564, 578–79 (1973) — and the test is **objective**: due process is offended by an arrangement posing a serious risk of actual bias, proven or not. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884 (2009); *Aetna Life Ins. Co. v. Lavoie*, 475

U.S. 813, 821–25 (1986).

The Fifth Circuit applied these principles in companion cases. *Caliste v. Cantrell*, 937 F.3d 525 (5th Cir. 2019), held that a magistrate's structural entanglement with a fund supplying roughly a fifth to a quarter of judicial expenses violated due process; *Cain v. White*, 937 F.3d 446 (5th Cir. 2019), held the same for judges whose own enforcement decisions replenished a fund they controlled. The Amended Complaint pleads an arrangement more extreme than either: **total dependency** on an approval regime controlled by a named Defendant in this very litigation (¶¶ 321, 330). If a 20-to-25-percent dependency offended due process in *Caliste*, a pleaded **one-hundred-percent** dependency states a claim *a fortiori*. The arrangement the City's own resolution memorializes — a judge paid by the hour on invoices a litigation adversary approves — admits of only one reading, and it is not a flattering one.

*United States v. Will*, 449 U.S. 200 (1980), is inapposite. *Will* held only that a salary measure affecting **every federal judge equally** did not disqualify, and was decided under the Rule of Necessity because no unconflicted tribunal existed. It says nothing about a single municipal bench pleaded to be wholly dependent on, and approved by, one official who is himself a Defendant. Defendant treats the controlling cases as though they were suggestions and argues the law she wishes existed, not the law that does. Her demand for "personal involvement" (Br. 6) likewise misfits a structural claim, which turns on the **configuration of the tribunal**, not a discrete personal act.

### E. The § 21-23-9 Out-of-Municipality Appointment Appears Nowhere in the Record and Fails the Statutory Predicate on the Face — Corroborating, Not Answering, the Structural Claim.

Section 21-23-9 prescribes a sequence, not a free-floating power. The governing authorities "shall have the power and authority to appoint a municipal judge pro tempore," who "shall perform all duties of the municipal judge in the absence of such municipal judge or if such municipal judge is unable to serve for any reason"; and only "[i]n the event a municipal judge pro tempore is not appointed or is absent or unable for any reason to serve" may "any justice court

10

judge of the county or municipal judge of another municipality ... serve in his place ... upon designation by the municipal judge." Miss. Code Ann. § 21-23-9. The Motion asserts only the final link in that chain — that Lusk, the municipal judge of D'Iberville, "was appointed by ... Simpson pursuant to ... § 21-23-9" (Br. nn. 6, 8) — and it produces nothing to support it: no designation order, no date, no minute entry, no resolution. An assertion of fact in an attorney's footnote is neither part of the complaint nor evidence of its truth. On a Rule 12(b)(6) motion the Court tests the pleadings and disregards the movant's extrinsic assertions; to have the designation considered at all, the Motion must convert under Rule 12(d) and produce the instrument it describes. Fed. R. Civ. P. 12(b)(6), 12(d); see Part F. The record contains no such document.

Even taken at face value, the assertion fails the statute on the face of the pleadings. The substitution scheme operates only where a municipal judge is absent or "unable to serve for any reason"; the substitute — including a judge of another municipality — serves merely "in his place." § 21-23-9. Where a resident judge remains able to sit, there is no place to fill and the power to reach beyond the bench is never triggered. As to two of the three resident judges, the Amended Complaint pleads no disqualifying conflict: Simpson and Steele are judges "neither of whom has had any prior controversy, litigation, or other professional contact with Plaintiff Petrini." ¶ 119.[2] The statutory predicate therefore presents a dilemma, and Plaintiffs prevail on either horn without the Court inquiring why any judge stepped aside. If the resident bench remained able to serve — and as pleaded Steele was unconflicted and available — the predicate was never satisfied and the reach to a judge of another municipality was unauthorized. If instead every resident judge was genuinely unable to serve, the only bench-wide disability the pleadings supply is the structural capture alleged in Count XII: a single Abide-controlled compensation-and-approval regime disqualifying all three judges at once (¶¶ 321, 330). At the pleading stage the inference favorable to Plaintiffs controls. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor may Defendant escape the fork by disclaiming the mechanism: the Brief argues Plaintiffs "identify no statute ... imposing any such duty" (Br. 7) even as it invokes § 21-23-9 as the very authority under which Lusk was seated. The framework exists; the Amended Complaint

11

alleges it was **captured and misused**, not absent.

The same statute forecloses recharacterizing Defendant's seat as the reserve the Motion's theory would require. Section 21-23-9 creates one conditional office — "**a municipal judge pro tempore**" — filled by governing-authority appointment and available only when a regular judge is absent or unable to serve. It is not a standing seat, and it is not an uncapped pool: reading it to authorize an open-ended bench of "pro tempore" judges would nullify the population caps § 21-23-3 expressly imposes, and a construction that defeats the neighboring section is not the one the Court should adopt. Defendant occupies neither lawful seat. She was appointed a **standing** § 21-23-3 "Municipal Court Judge" (Res. 470-25), making a third standing judge where § 21-23-3 permits two (Part B); and she is not the § 21-23-9 judge pro tempore — she was not appointed as one, she is paid **$140 per hour** on invoices a named Defendant approves rather than the **$300-per-session** rate the City fixed for the pro tempore office (Res. 507-14), and the record reflects no occasion of a regular judge's absence that the reserve seat exists to fill. The arithmetic is set out in Part B and not repeated here.

The out-of-municipality substitution did not, in any event, cure the defect it was offered to answer: by the defense's own account a specially appointed Biloxi judge "would be paid by the City of Biloxi" (ECF 56 ¶ 24), entering the **same** captured compensation regime the Amended Complaint describes.[3] And a judge disqualified from a proceeding does not, at all events, handpick the substitute who hears it. Miss. Code Jud. Conduct Canon 3E.

---

[2] Steele's availability is a matter of municipal-court record and judicially noticeable. Fed. R. Evid. 201. Steele had previously presided over and arraigned Petrini in an unrelated Biloxi Municipal Court traffic matter — a proceeding from which Defendant Ready abstained — in which Petrini declined to enter a guilty plea and elected the driver-improvement course. That Steele sat on a Petrini matter at all is itself proof that no disqualifying conflict existed: a conflict requiring his recusal from Cause No. 260301169 would equally have barred him from the earlier matter, yet he presided over that one without recusing. His neutral prior service thus confirms — it does not undercut — the allegation that there was no reason for Steele to step aside, and that he remained available to do precisely what a judge of another municipality was instead summoned to do.

[3] That the substitute was no neutral outsider is the Motion's own premise turned against it. Having asserted that Lusk "was appointed by ... Simpson pursuant to ... § 21-23-9" (Br. nn. 6, 8), the Motion describes one Biloxi judge selecting, to fill a Biloxi recusal vacuum, a lawyer whom the Amended Complaint pleads — and who admits — maintains his primary law practice in Biloxi, keeps a law office on the same street as Biloxi City Hall, represents private criminal-defense clients before the Biloxi prosecutor's office, and attends the Biloxi Businessmen's Club. Am. Compl. ¶¶ 114–117; Answer of Scott H. Lusk ¶ 29 (ECF 56) (admitting ¶¶ 115–116). A judge so chosen — and, on the defense's own account, paid by the City of Biloxi — did not cure the captured forum but enlarged it.

**F. The Motion Argues Facts Outside the Pleadings, and Its Footnotes Help Plaintiffs.**

A Rule 12(b)(6) motion tests the complaint, not the movant's competing facts; extrinsic assertions are disregarded or convert the motion under Rule 12(d). Defendants' theory requires the Court to unsee the record. Three footnotes are both extrinsic and favorable to Plaintiffs:

**(1)** The "never received" denial (Br. n. 4) is contradicted by ¶ 94, which pleads transmission of the April 29 Notice and Demand by electronic mail through the Clerk of the Biloxi Municipal Court — the proper conduit to the bench. At the pleading stage ¶ 94 is taken as true; the footnote cannot defeat it, and is at most a disputed fact improper on a motion to dismiss.

**(2)** The Lusk-appointment assertion (Br. nn. 6, 8) is the Defendant's own acknowledgment that the § 21-23-9 designation pathway — the pathway the Amended Complaint alleges was structurally captured — was invoked.

**(3)** The recusal "jab" (Br. n. 9) concedes the predicate of Count XII: by treating ¶ 99 as true, the Brief concedes the recusal that created the vacuum the Amended Complaint alleges was filled by another captured judge.

To the extent the Court credits any of these assertions rather than disregarding them, the Motion must be converted to summary judgment and Plaintiffs afforded discovery — including production of the designation order the footnote asserts but the record lacks, and discovery into whether the undocumented substitution that placed an out-of-municipality judge on this matter was an isolated event or a recurring practice, a question that bears directly on the structural-capture and municipal-custom allegations and cannot be resolved on the pleadings. Fed. R. Civ. P. 12(d).

**G. Count XI States a Procedural-Due-Process Claim Grounded in a Mutually Explicit Understanding, Not a Contract.**

Defendant argues she did not sign and is not bound by the October 1 settlement, citing *Crowley v. Germany*, 268 So. 3d 1277 (Miss. 2018), and *Covington v. Aban Offshore Ltd.*, 650 F.3d 556 (5th Cir. 2011). Those non-signatory contract cases answer a claim the Amended

13

Complaint does not assert. A protected interest for due-process purposes may arise from "mutually explicit understandings," not only a formal contract. *Perry v. Sindermann*, 408 U.S. 593, 601 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). The City, through its prosecutor, gave Petrini a written assurance expressly naming "Judge Ready (or … another Municipal Court Judge)" as the probable-cause reviewer (¶ 318), on which Petrini relied in resolving prior litigation. Whether Ready personally signed is beside the point: she is sued for her own administrative conduct in the recusal vacuum, not for another's contract.

**H. The Motion Does Not Reach Count XVIII, and Count XVII Is Not Barred.**

The Motion seeks dismissal of all claims but briefs only Count XVII (§ 1985(2)); it never identifies **Count XVIII (§ 1985(3))**, in which Ready is a named Defendant, nor addresses its distinct elements. A movant who briefs only some claims does not carry the burden as to the rest; Count XVIII is not before the Court and survives.

As to Count XVII, judicial immunity does not defeat a conspiracy claim arising from a judge's conduct; private actors who conspire with a judge remain liable and the conspiracy is actionable. *Dennis v. Sparks*, 449 U.S. 24, 27–29 (1980). The **intracorporate-conspiracy doctrine** does not bar the count, because it reaches only a "single legal entity … incapable of conspiring with itself," *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994), and Count XVII names numerous **private, non-City actors** — including Tara Ramage, Anthony Chastain, Samuel Poulos, and Joanne Poulos — who are not agents of a single entity. The agreement is inferable from the common Abide pipeline, the coordinated April 28–29 sequence, and the out-of-municipality substitution; an individual defendant's precise role is a matter for discovery, not the pleadings. *Twombly*, 550 U.S. at 556. Should the Court find the agreement insufficiently particular as to Ready, the remedy is leave to amend, not dismissal with prejudice.

14

## I. The Fee and Sanctions Demand Is Improper.

The request for fees under Rule 11, § 1988(b), and the Mississippi Litigation Accountability Act (ECF 63) fails on every theory. **Rule 11** sanctions require a **separate motion** served twenty-one days before filing; they may not be embedded in a merits motion. Fed. R. Civ. P. 11(c)(2). **Section 1988(b)** authorizes a prevailing defendant's fees only where the action is "frivolous, unreasonable, or without foundation," *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) — which a claim grounded in *Caliste*, *Cain*, *Pulliam*, and *Caperton*, and corroborated by the Defendants' own bench-wide recusal, plainly is not. The **Mississippi Litigation Accountability Act**, Miss. Code Ann. § 11-55-1 *et seq.*, does not govern federal civil-rights claims. And the Brief [ECF 64] never briefs the fee request at all; a demand advanced without argument is waived. L.U.Civ.R. 7(b). Strip the adjectives from the Motion and nothing load-bearing remains; that a movant whose own exhibits and whose City's own records defeat the Motion would also have this Court **punish** the Plaintiffs for opposing it is reason to deny the sanctions request, not to grant it.[4]

## J. Any Dismissal Should Be Without Prejudice, With Leave to Amend.

Dismissal with prejudice requires futility. Because the structural-capture, administrative-act, and conspiracy theories are viable, amendment is not futile, and leave should be freely given. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Haines*, 404 U.S. at 520. Moreover, **newly available public records** — the City's 2025 appointment resolutions and its own court website — indicate that Biloxi seated three § 21-23-3 municipal

---

[4] The incongruity is difficult to overlook. The same Motion that asks this Court to brand the pro se Plaintiffs' pleading "frivolous, unreasonable, or without foundation" and to sanction them for it (ECF 63) argues in its text that Plaintiffs "identify no statute … imposing any such duty" to designate a successor (Br. 7), while its own footnotes rest that very designation on Miss. Code Ann. § 21-23-9 (Br. nn. 6, 8); denies that Defendant received the April 29 Notice and Demand (Br. n. 4) that the Amended Complaint pleads was transmitted not only to her but to the City's litigation counsel at Currie Johnson & Myers, to the City's Director of Legal — Peter Abide, whose approval the City's own resolution makes a precondition of Defendant's compensation (Res. 470-25; ¶¶ 321, 330) — and to the Clerk of the Biloxi Municipal Court (¶ 94); reproduces the same footnote three times (Br. nn. 2, 3, 5) and the same Mireles passage twice (Br. 10); carries a running header reading "-2-" across the first page of the Motion itself; and renders the Fifth Circuit decision it quotes on bribery and immunity as "*Sparks v. Duval* Ranch Co.," dropping the County. A litigant that asks this Court to sanction its opponent for want of rigor invites scrutiny of its own.

15

judges where the statute authorizes two, and that Defendant's compensation is subject to approval by a named Defendant. Plaintiffs are entitled to amend to plead these facts; their availability independently confirms that amendment is not futile and that any dismissal must be **without prejudice.**

## VI. CONCLUSION

A closing word on the sanctions Defendant asks this Court to impose. **Defendants would have the Court mistake their motion for merit — and then punish the Plaintiffs for declining to share the mistake.** To grant that request, the Court would have to **unsee the record**: that two residents and working journalists were arrested on a charge **the very statute charged forecloses on its face** — the news-organization exemption, Miss. Code Ann. § 97-29-45(8) (Am. Compl. ¶ 302); **handcuffed four times, including foot restraints despite a disclosed disability;** subjected to a **suspicionless X-ray** and a **visual body-cavity strip search** after a pat-down had disclosed nothing; **held some nine hours without counsel, without a telephone, and without medication**[5]; held on a **pre-set bond of $1,000 — twice the $500 maximum fine the charged misdemeanor could ever impose** (¶¶ 75, 356–360), a sum that secures no appearance and serves only to punish; and placed, by *sua sponte* order, under a **prior restraint** on protected speech that stands to this day — a restraint entered by a judge who **does not appear on the Biloxi municipal roster and for whom no lawful appointment exists in the record,** in a proceeding over which **the Defendant who now claims its immunity likely held no lawful judicial office at all.** Taken as true — as on a Rule 12(b)(6) motion they must be — and viewed against the chronology the Amended Complaint pleads, these allegations admit of only one reading, and it is one that sounds **less in tort than in crime.** Whether the cause was negligence or the concerted conduct the Complaint pleads, there is **no innocent explanation** for what it describes; there is only the question of who must answer for it. Plaintiffs' theory is not ornament. It is that the people of Biloxi have been judged, jailed, searched, and silenced by **usurpers** — persons wielding the State's most coercive powers from seats the law never lawfully

16

gave them.

That the lawyer who asks this Court to sanction the Plaintiffs is himself the standing **Board Attorney for the very County whose jail did these things** is not a defense of that conduct. It is a preview of how far the capture the Complaint pleads reaches — and of why a motion this overbuilt was filed to end the case before the record could be read. A party in that position does not move for sanctions because the claims are frivolous; he moves because they are not.

On this record the question is not close. The record has already decided it; the Court need only agree.

Defendant Ready must answer for what she did, for what she failed to do, and for the lawfulness of her standing to do either — and not to the Plaintiffs alone. She must answer to this Court, whose process her place on the bench either honors or usurps. And she must answer, above all, to the **people of Biloxi,** who are summoned before that bench under color of law and made to take its judgments as the State's own. A tribunal seated outside the law does not injure one litigant; it injures everyone called before it. That is why the Plaintiffs invoke not only their own rights but the **public interest,** and why the relief they seek is in part declaratory — to settle, for this case and for every case after it, whether the court that judges the people of Biloxi is lawfully constituted at all. On a motion to dismiss, where every allegation is taken as true, that public interest is no makeweight; it is the measure of what is at stake. It weighs, and it weighs only one way.

**WHEREFORE,** Plaintiffs respectfully request that this Court **GRANT** this Response and enter an order that:

---

[5] This episode came to light only after the Amended Complaint was filed and is reserved for amendment (Part J): at approximately 5:26 p.m. on May 5, 2026, while Plaintiff Fusco was held at the Harrison County jail and denied any telephone access, a representative of Harrison County telephoned his wife, falsely represented that he had "agreed" to wear an ankle monitor as a condition of release — a condition he never requested, proposed, or discussed — and demanded an additional sum, over and above the pre-set $1,000 bond, outside the presence of counsel and without any judicial determination. Decl. of Lizbeth Fusco ¶¶ 3, 5–6 (corroborated by neighbor Will Rogers); see Pls.' Mot. to Disqualify Tim C. Holleman. The conduct is that of Harrison County, a named Defendant on the custodial counts; that it is now defended by the same official who serves as Board Attorney for Harrison County — the entity that operates the jail in which it occurred — leaves no innocent explanation on the table.

17

(a) **DENIES** the Motion as to the declaratory structural-capture claim (Count XII) and as against the City of Biloxi, which enjoys no immunity;

(b) **DENIES** the Motion as to the conduct pleaded as administrative (Counts XI–XII), which absolute immunity does not reach;

(c) **DENIES** the Motion as to Count XVIII (§ 1985(3)), which the Motion does not address, and as to Count XVII (§ 1985(2));

(d) **DISREGARDS** the factual assertions in the Brief's footnotes as matters outside the pleadings, or, if it credits them, **TREATS** the Motion as one for summary judgment under Rule 12(d) and affords Plaintiffs discovery;

(e) **DENIES** the request for fees and sanctions under § 1988, Rule 11, and the Mississippi Litigation Accountability Act;

(f) **DENIES** dismissal with prejudice and, as to any claim dismissed, **GRANTS** leave to amend; and

(g) **GRANTS** such other relief as is just and proper.

Plaintiffs respectfully request oral argument.

Respectfully submitted this __5__ day of ____June____, 2026.

/s/ Yuri Petrini
YURI PETRINI
Plaintiff, Pro Se
929 Division Street
Biloxi, MS 39530
Telephone: (305) 504-1323
Email: contact@peoplevsbiloxi.com
Email: yvpetrin@my.loyno.edu

/s/ Jarrod Lewis Fusco
JARROD LEWIS FUSCO
Plaintiff, Pro Se
435 Cove Drive
Biloxi, MS 39531
Telephone: (702) 375-8926
Email: publicaffairs@biloxipolitics.com

## CERTIFICATE OF SERVICE
(Pursuant to Fed. R. Civ. P. 5; see L.U.Civ.R. Form 2(e))

I hereby certify that on the __5__ day of ____June____, 2026, I filed the foregoing with the Clerk of Court, and that service upon all Defendants who have appeared in this action will be accomplished through the CM/ECF system pursuant to Fed. R. Civ. P. 5(b)(2)(E).

/s/ Yuri Petrini

/s/ Jarrod Lewis Fusco

19