**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

YURI PETRINI and
JARROD LEWIS FUSCO,
    **Plaintiffs,**
v.                                                                        Civil Action No. 1:26-cv-00094-LG-RPM
KENNY GLAVAN, ET AL.,
    **Defendants.**

## <u>SUPPLEMENTAL DECLARATION OF YURI PETRINI IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO THE MOTION TO STRIKE EXHIBIT F (DKT #77)</u>

I, Yuri Petrini, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am a Plaintiff in this action, over the age of eighteen, and I make this declaration on personal knowledge. Where I describe events from memory, I do so to the best of my recollection; where I quote a document, I quote it verbatim, and a true copy is attached or identified. Because Defendant asks the Court to erase the only sworn account of counsel's influence-related conduct, I place the fuller record of that conduct under oath in this declaration, so that the Court may weigh Exhibit F in the context in which it was given. I reaffirm my prior Declaration (Exhibit F, DKT #70-7), in every particular, under penalty of perjury. I am mindful of the gravity of an allegation concerning an officer of the court; I do not advance it lightly, and I do not retreat from it.

2. Following the September 30, 2025 status conference, the parties were directed to confer, and, to the best of my recollection, I conferred separately and in sequence: first with Mr. Harenski — a conferral that produced a favorable outcome, the agreement later executed as the October 1, 2025 Harenski settlement; next with Mr. Adam Harris, to whom I offered to remove Madeline Costelli Pettry as a defendant, without monetary compensation, in exchange for her deposition under oath — an offer I summarized to Mr. Harris in writing the same day, at 2:12 p.m.; after my October 15, 2025 request that he "clarify your position and report to the court," Mr. Harris wrote on October 20, 2025 only that "[w]e are considering your proposal," and no

response followed; and then, in a separate room, with Mr. Holleman, Mr. Whitehead, Mr. Ros, and Mr. Cruthirds. I confirmed the substance of my conferral with Mr. Harenski in writing at 2:15 p.m. that same day; a true copy of that email is Exhibit F to the Response, and a true copy of my same-day summary to Mr. Harris is Exhibit G to the Response. Mr. Harenski replied on October 2, 2025, thanking me for my "willingness to sit down and discuss this matter" and observing that "[e]xperience appearing before Judge Myers told me that he would see to it that the parties were able to sit down and talk."

3. In the meeting with Mr. Holleman, Mr. Whitehead, Mr. Ros, and Mr. Cruthirds, the participants remained together for most of the meeting; they did not, however, to the best of my recollection, remain together throughout. Mr. Ros, Mr. Whitehead, and Mr. Cruthirds each left the room and returned at different times during the meeting, one or more times each; each of them left at least once, whether separately or accompanied, including for breaks. At one point Mr. Cruthirds — visibly agitated and, as I perceived it, frantic — abruptly jumped from his seat, struck the table with both hands, and stormed out of the room, an outburst of a kind I had never before witnessed from an attorney in a courthouse. When I asked why, Mr. Ros stated, in substance, "Because you sued us. What do you expect?"

4. The statements described in ¶ 3 of Exhibit F were made at the end of that meeting, at a moment when Mr. Ros, Mr. Whitehead, and Mr. Cruthirds had already left the room and only Mr. Holleman and I remained. At that moment, no other person was present, to the best of my recollection.

5. Separately, at a different point during the post-conference period — and within close range, in time and place, of the conduct reported in Exhibit F — the Magistrate Judge's courtroom deputy — who entered the room more than once, was courteous, thanked the participants for attempting to resolve the matter, and on a later visit advised that he would need the room soon because other matters were scheduled — was present when Mr. Holleman, to the best of my recollection, asked the deputy whether Judge Myers was available or busy and indicated the Judge was "back there." I do not contend the deputy heard the statements described

2

in ¶ 3 of Exhibit F, and I do not state whether the deputy's inquiry occurred before or after them. I offer this paragraph only as a separate instance of Mr. Holleman holding himself out as able to reach the Magistrate Judge. I do not allege — and nothing in this declaration should be read to suggest — any involvement, impropriety, or appearance of impropriety whatsoever on the part of the deputy, who acted at all times with courtesy and professionalism, or of any employee of this Court.

6. On entering the courthouse on September 30, 2025, security required me — a pro se litigant — to surrender my telephone. Counsel retained their telephones; as I recall, Mr. Ros used his openly during the conferral. I had no means to record any part of the post-conference proceedings.

7. On November 5, 2025, I wrote Defendant Michael Whitehead and the City of Biloxi's Chief Administrative Officer, Richard Weaver, documenting, among other things, the following, quoted verbatim from that email: "each single indicia of dishonesty (such as Tim comments about his 50 years of experience and board position and his remarks about meeting Magistrate Myers after our post conference) they are transmitted, documented ...." The quotation above is true and accurate. A true copy of the email will be lodged with the Court on request.

8. On June 17, 2026, Mr. Holleman emailed Mr. Fusco and me a draft motion for sanctions, writing: "Pursuant to Under Federal Rule of Civil Procedure 11(c)(2), I have dated the Motion for July 8, which gives you 21 days to withdraw the Declaration of Mr. Petrini," and: "Mr. Fusco if you advise that Mr. Petrini prepared these pleadings not you, then I will delete from the Motion for Sanctions, otherwise you are just as responsible as he is." Hours later he wrote Mr. Fusco to "get a 'real' lawyer." On June 24, 2026, at 9:15 a.m., I wrote Defendant Whitehead — copying Mr. Fusco, Mr. Cruthirds, Mr. Ros, and Mr. Holleman — inviting "any context, clarification, or correction" of statements I recalled Mr. Whitehead making to me about District Judge Guirola, including, in substance, that the Judge "rules against [him] all the time" and, as to a then-pending matter, that I "will lose this one," and recommending that I check the docket for examples. Those statements were made to me, to the best of my recollection, on March 31, 2026,

3

during the settlement discussions of that day pleaded at First Amended Complaint ¶¶ 22–37, in the parking lot near the intersection of Division and Bohn Streets in Biloxi. (My June 24 email contained a typographical error rendering the year as "2028"; the correct date is March 31, 2026.) Mr. Whitehead replied once — "Your comments are non-sensical, false, and I don't intend to justify your assertions by any other response. I do warn you sanctions will be sought if you make false claims." — and did not answer my direct follow-up question: "Do you deny that you said that?" It is my opinion and belief, and I state it expressly as such, that Mr. Whitehead made the remarks described above to convey that he enjoyed ex parte access to, and advance knowledge of the inclinations of, the District Judge — that in remarking, in substance, that I "will lose this one," Mr. Whitehead was conveying the Judge's own view of an outcome that had not yet issued — and, additionally, to portray the Court as "fair" by demonstrating that Defendants, too, receive adverse rulings. To be clear, and consistent with ¶ 21 below: I make no allegation that Judge Guirola made any such remark, engaged in any ex parte communication, or acted improperly in any way. My concern, as with Exhibit F, is what Mr. Whitehead stated and implied to me; Mississippi Rule of Professional Conduct 8.4(e) requires nothing more.

9. On June 25, 2026, Mr. Holleman responded in Mr. Whitehead's place: "Since you included me in your email exchange I will respond. Michael is my client and I advise him to not to respond to you any further.... So have fun and if you file anything I assure you sanctions will be sought against both you and Fusco if he joins with you. You may attach my email to whatever you intend to file." When I asked the question once more, he wrote: "The answer is the same no matter how many times you ask or email." True copies of the June 24–25 exchange are Exhibit A to the Response.

10. On June 24, 2026, at approximately 5:51 a.m., I transmitted a quo warranto referral to the Mississippi Attorney General's Public Integrity Division at investigations@ago.ms.gov, copying only Mr. Fusco. At 11:31 a.m. that day I forwarded the referral to Mr. Cruthirds, Mr. Ros, and Mr. Abide — attorneys of Currie Johnson & Myers, P.A. — and to Mr. Fusco. I did not send the referral, or any part of it, to Mr. Holleman — not then, and not at any time before his

4

letters described in ¶ 11. True copies of the transmittal emails, with their recipient headers, are Exhibit E to the Response.

11. On June 25, 2026, at approximately 9:54 p.m., Mr. Holleman wrote the Attorney General's office opposing my referral, and again on June 26, 2026, writing among other things: "I have every right as their counsel to respond to Mr. Petrini diatribes"; "I also have every right to make sure your office is getting the truth and not Mr. Petrini's version"; "I do question whether a non-citizen has a right to ask the AG's office to bring a Quo Warranto action"; and that I "claim[] to have four law degrees ... but [] can't read a simple statute." In the June 26 email he quoted my referral letter verbatim, including its closing line — "I would far prefer to stand alongside the Attorney General than before the Court alone." True copies of those emails are Exhibit B to the Response.

12. On June 26, 2026, at approximately 11:00 p.m., I personally observed a post published by Troy Mosher in the "Biloxi Politics Forum" — a page published by Mr. Mosher and an individual identified as Anthony "Parrothead" Oxenholt — stating that Plaintiffs' cases were "down to 3." Mr. Fusco and I spoke by telephone and discussed the post — including why its publishers would say such a thing. Mr. Fusco checked the dockets of our cases and reported to me that no entry reflected any such disposition — as he confirms in his own declaration filed herewith — and at the time we assumed the post was simply mistaken. As of that time I was aware of no public docket entry in Case No. 1:25-cv-00233 reflecting any disposition of that case; the order disposing of that case — its Document 74 — was entered on June 30, 2026, four days later. I also personally observed that Mr. Holleman publicly endorsed — "liked" — the same page's post concerning his motion for sanctions. On July 1, 2026, before placing any of this on the docket, I gave Mr. Holleman written notice and an opportunity to respond, inviting him to "identify the statement and state the correction with specificity." On information and belief, Mr. Mosher has a family member believed to be closely connected to the United States District Court for the Southern District of Mississippi; I make no direct allegation concerning that connection at this time. My statements concerning any affiliation between Mr. Holleman and Mr. Mosher or

5

Mr. Oxenholt, and the foregoing statement concerning Mr. Mosher's family member, are made on information and belief only, and I make no accusation against any court employee.

13. On June 27, 2026, I sent Mr. Holleman a press request for comment on a forthcoming series of articles, copying three journalists. His June 28, 2026 reply, as I received it, shows copies to — among others — guirola_chambers@mssd.uscourts.gov and myers_chambers@mssd.uscourts.gov, the three journalists, and investigations@ago.ms.gov, and states in its body: "By copy of this email I am contemporaneously copying Judge Guirola, Magistrate Myers, District Attorney Crosby Parker, AUSA Jonathan Buckner, investigations@ago.ms.gov, and all counsel of record ...." The reply states, among other things, that "the 1st Amendment does not protect you from defamation and other potential actions, including potential criminal misconduct"; that Mr. Fusco and I "are advised to seek the advice of good attorneys, including one with criminal experience, as in my opinion you will need a couple in the near future"; and that my email was "a clear sign of weakness of mind and certainly character." A true copy is Exhibit C to the Response.

14. On July 1, 2026, in response to the notice described in ¶ 12, Mr. Holleman first wrote: "I am sorry I can't respnd when I don't understand what are saying could you be more specific?" Approximately two hours later he wrote: "You have serious issues with truth and are paranoid in my opinion.... It appears to me that you need to seek mental health treatment as soon as possible because you appear to be suffering from serious mental and delusional issues and may a danger to yourself and others," and stated he was again blocking my email. True copies of the July 1 exchange are Exhibit D to the Response.

15. Regarding the October 1, 2025 letter described in Defendant's Opposition (ECF 69 at 10): the letter was transmitted to me by Mr. Cruthirds on October 1, 2025, and set out procedures and conditions for an inspection of 1606 Beach Boulevard at which, in counsel's words, "you or any other individual who has an ownership interest in the property cannot be present." The inspection was conducted on November 18, 2025, without me. Counsel represented that a report identifying any corrections would be provided on the spot; no report was provided. The report

6

was then promised for Monday, November 24, 2025; none came. On November 25, 2025, Mr. Cruthirds confirmed to me by telephone that the report would be sent "yesterday at the latest, today at the most." No report, no list of corrections, and no notice of violation has ever been provided to me, and no certificate of occupancy for 1606 Beach Boulevard has issued to this day. I documented the delay in writing to counsel and the City Council on November 24 and November 26, 2025, and received no response; true copies will be lodged with the Court on request. On June 11, 2026, I asked counsel in writing for "a single list of everything that remains to be done for the certificate of occupancy for 1606 Beach Boulevard to issue." Counsel's written response of June 18, 2026 identified no previously sent list of requirements; stated that "[a]dditional inspections would be necessary to identify any additional potential issues"; and stated "[w]e do not anticipate sending inspectors to the property." A true copy of the June 18, 2026 letter is Exhibit H to the Response.

16. The offer described in ¶ 2 — removal of Ms. Costelli Pettry as a defendant, without monetary compensation, in exchange for a single deposition under oath — was never accepted, never rejected, and never, so far as I was ever told, presented to Mr. Harris's client; after Mr. Harris's October 20, 2025 "[w]e are considering your proposal," I received no further response of any kind. I draw my own conclusions from that silence, and I reserve them for the appropriate motion.

17. I further allege the following, stating it as allegation and as my opinion and belief except where a document is cited. Mr. Holleman, Mr. Whitehead, Mr. Ros, and Mr. Cruthirds, along with others, are acting in concert to withhold the certificate of occupancy for 1606 Beach Boulevard and to obstruct permits for my properties. Findings and restrictions appear sua sponte — no triggering event, no inspection finding, no notice of violation. The certificate has been conditioned on terms no building code contains: indemnification of City personnel and their lawyers by my engineers, and dismissal of my claims against Judge Apryl Ready — a defendant whom the demanding firm, Currie Johnson & Myers, does not even represent. *See* First Amended Complaint ¶¶ 20–23. I have delivered several engineering reports, at a cost to me exceeding

$20,000, including the September 5, 2025 report of Dreux A. Seghers, P.E. (MS License No. 11888). The pool at 1606 Beach Boulevard has stood filled for months without a sign of structural distress. My commercial property at 929 Division Street is zoned RB — a district that permits Research and Development, Warehouse, and Contractor's Office uses — yet restrictions have been asserted against that property without any triggering event, most recently in counsel's June 25, 2026 letter. And in settlement documents presented to this Court, Defendants stood ready to issue the same certificate with no additional requirement identifying any true deficiency in the structure's construction or its documentation. *See* Reply (ECF 70) Ex. A. To this day, no one has stated why the several engineering submittals already delivered are not enough. In my opinion, that single fact gives the game away: requirements that vanish when a release is signed are not requirements; they are leverage. It is likewise my opinion and belief that the "vexatious" label counsel presses is part of the same effort — a strategy to discredit the person the withheld certificate injures. That pattern of invented restrictions, and of litigation used as leverage, has now been extended to Mr. Fusco, including by counsel's June 25, 2026 letter to him. The documents referenced are of record or will be lodged with the Court on request.

18. As to the order said to appoint Scott Lusk as a special judge of the Biloxi Municipal Court: the Biloxi Municipal Court's Senior Deputy Court Clerk, Ashley Coker, confirmed to me — by email and in person — that, after internal review, no order, resolution, designation, or other documentation authorizing Judge Lusk's service existed. Her confirmation is pleaded at First Amended Complaint ¶ 102. WLOX reported the same: "The Biloxi Municipal Court's own Senior Deputy clerk confirmed in writing that after internal review, no order, resolution, designation, or other documentation authorizing Lusk's service as a Biloxi Municipal Court judge exists." WLOX (Noah Noble), May 11, 2026. When an appointment order later appeared in this case, it was produced and filed by Mr. Holleman — counsel for Judge Ready — as an exhibit to his response in support of her motion to dismiss, ECF 74-1; it was not produced by Judge Lusk or by his own counsel, Currie Johnson & Myers. Indeed, the validity of Judge Lusk's appointment has been briefed in this case by Mr. Holleman, for Judge Ready — not by counsel for Judge

Lusk. *See* ECF 64 at 3 n.6; Reply (ECF 70) at 4 n.4. It is my belief, and I state it expressly as belief: that the document is fabricated, and that it was introduced into the record through Mr. Holleman, rather than through Judge Lusk or Judge Lusk's own counsel, to supply deniability. Plaintiffs' filings already contest the appointment, and a referral concerning Judge Lusk's service is pending with the Mississippi Attorney General.

19. The record of this case already contains counsel's December 2, 2022 "FW: Divine" emails — in which Mr. Holleman wrote "Please consider charging Ms Divine since she violated the diversion program," and that he had moved to "make sure the city charges Ms Divine," with a meeting "with the Judge and Police Chief" to discuss "hopefully charging" her — written while Ms. Divine's federal civil-rights suit against his client was pending. Reply (ECF 70) Ex. E; Supplement Ex. C. It is my speculation and belief, and I label it expressly as such, drawn from that documented pattern: that Mr. Holleman was involved, along with other lawyers named in these proceedings, in the fabrication of the criminal charges brought against Mr. Fusco and me, and in the sanitization of the record that followed — including a gag order imposed as a condition of bond on May 5, 2026, prohibiting contact between the two defendants, which was never provided to us in writing. Mr. Fusco addresses in his own declaration, filed herewith, the events he experienced firsthand — including the telephone call made to his wife concerning ankle-monitor payment while he was held without telephone access. *See also* Reply (ECF 70) n.14.

20. It is likewise my belief, stated expressly as such: that Judge Lusk will not rule on Plaintiffs' motions upon request, and that this is occurring in concert with the lawyers named above. The publishers described in ¶ 12 have anticipated step after step of these proceedings before the public record disclosed them — the filing of the charges; the military complaints; when the warrant issued and when judges recused; and the disposition of Case No. 1:25-cv-00233, stated four days before its order appeared on this Court's docket. That pattern is pleaded at First Amended Complaint ¶ 234 — disclosures "each true, each accurate," made before any public-docket entry — and certified transcripts of the posts have been preserved. The

same publishers have asserted, in substance, that Mr. Fusco and I will be convicted, with trial in the municipal matter set for July 31, 2026. It is my belief, drawn from that record of accurate advance assertions, that the outcome has been fixed. A Franks motion has been filed in the municipal case and remains pending. And I allege, under penalty of perjury and before this Court: no fair tribunal is being afforded to us in that forum — no due process, and no semblance of justice.

21. I reaffirm ¶ 9 of Exhibit F: Judge Myers' integrity is not in question; nothing in this declaration or in Exhibit F suggests that any improper contact occurred or attributes any wrongdoing to any judge or to any employee of this Court; Mississippi Rule of Professional Conduct 8.4(e) requires none. Counsel, by contrast, predicted in a filing in a related case that I "may next turn [my] sights on this Honorable Court." Rebuttal at 7, *Petrini v. Ready*, No. 1:26-cv-00069-LG-RPM (S.D. Miss. Mar. 12, 2026), ECF No. 10. No such thing has occurred, and no such thing will occur: I have never alleged, and I do not allege, wrongdoing by any judge of this Court. The prediction is counsel's, not mine.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of July, 2026.

/s/ Yuri Petrini
YURI PETRINI
*Plaintiff, Pro Se*
929 Division Street
Biloxi, MS 39530
Telephone: (305) 504-1323
Email: contact@peoplevsbiloxi.com
Email: yvpetrin@my.loyno.edu